Galen WILLIS, Petitioner, Appellant (C6–95–363), Respondent (C5–95–371),

v.

The COUNTY OF SHERBURNE, Petitioner, Respondent (C6–95–363) Appellant (C5–95–371),

Dan Nickols, Respondent.

Nos. C6–95–363, C5–95–371.

Supreme Court of Minnesota.

Oct. 31, 1996.

Frederick E. Finch, John M. Buckley, Bassford, Lockhart, Truesdell & Briggs, P.A., Minneapolis, for Willis.

Michael J. Ford, Kenneth H. Bayliss, Quinlivan, Sherwood, Spellacy & Tarvestad, P.A., St. Cloud, for Sherburne County.

Jeff M. Zalasky, Lauri A. Vranyes, Erstad & Riemer, P.A., Minneapolis, for Nickols.

## OPINION

COYNE, Justice.

On the petition of plaintiff Galen Willis and conditional petition of defendant Sherburne County we review an unpublished decision of the court of appeals, *Willis v. County of Sherburne*, Nos. C6–95–363, C5–95–371, 1995 WL 479640 (Minn.App., Aug. 15, 1995). Following termination of his employment, Willis sued Sherburne County and Dan Nickols, alleging that the county had wrongfully discharged him, breached his employment contract, discriminated against him because of a medical disability, and defamed him and alleging that Nickols had wrongfully interfered with his employment. The district court granted the defendants' motions for summary judgment with respect to Willis' wrongful termination claim but denied the motions with respect to Willis' claims of breach of contract, discrimination and defamation and the claim that Nickols interfered with Willis' prospective business advantage. The district court granted the plaintiff's contemporary motion to amend his complaint. On appeal the court of appeals affirmed summary judgment dismissing the wrongful discharge claim and ruled that because Willis had not proceeded by timely writ of certiorari, the court also lacked subject matter jurisdiction with respect to Willis' breach of contract claim. Denial of summary judgment with respect to claims of defamation and disability discrimination was affirmed. We affirm the decision of the court of appeals.

In his amended complaint, Willis makes these allegations: Willis was employed in 1988 as an appraiser in the office of the Sherburne County Assessor. In 1989 he became manager of the newly created mapping department within the county assessor's office. In June of 1990 the Sherburne County Board established a Geographic Information System (GIS) designed to create a database of geographical information which could be used to implement a countywide 911 emergency dispatch system, land use planning and other public uses. On June 6, 1990 the county board reorganized the mapping department as a separate county department known as Land Information/Mapping Office and appointed Willis as department director.

As director of the Land Information/Mapping Office, Willis reported directly to the board of county commissioners, and on his recommendation the board authorized the employment of a registered land surveyor to perform the surveying work previously contracted with outside surveyors. Willis hired Dan Nickols, a licensed surveyor, who was later appointed Sherburne County Surveyor.

In January 1991 Willis suffered an acute episode of multiple sclerosis. He advised Commissioner Michael Johnson, the chairman of the county board, of his illness, saying that although it affected his physical coordination, it did not impair his ability to do his job. Johnson assured Willis that his job was not in danger, but he suggested that Willis not inform David Loch, the county coordinator, that he had multiple sclerosis. Willis did not inform Loch but from time to time he discussed his condition with other county department heads.

According to Willis, Nickols came to resent Willis' supervision and "began to undermine Willis' authority." Then Nickols became openly critical of Willis' qualifications, complaining to members of the county board and other county officials about Willis' management of the department and that Willis was not a licensed surveyor. At about the same time, the county commissioners began to receive anonymous letters accusing Willis of malfeasance and misfeasance in the performance of his duties. On information and belief, Willis alleges that Nickols wrote or

solicited the writing of those letters in order to undermine the board's confidence in Willis' ability to manage the Land Information/Mapping Office.

Willis alleges that the county board failed to investigate charges made by Nickols and the anonymous letter writers. Willis also asserts that his job performance was discussed at both open meetings of the board and one or more closed meetings with Nickols, from which Willis was excluded. Willis also accuses the newspapers of Sherburne County of printing Nickols' and some county commissioners' factually inaccurate statements about Willis.

In April or May of 1993 the county board split the Land Information/Mapping Department into two divisions. Nickols became supervisor of the mapping division and Willis remained as head of the Geographic Information System (GIS) division.

Despite the chairman's assurance that Willis' job was not in jeopardy, on June 8, 1993, the GIS operation was assigned to the mapping division and Willis was directed to report to Nickols.

A day or two later Willis told Nickols of his multiple sclerosis and informed Nickols that his condition precluded participation in field survey operations. Willis also says he requested confidentiality with respect to his illness but that within a few days Nickols advised him that he had discussed the matter with "friends" and that he was going to disclose the information to the board or to David Loch, the county coordinator.

On June 15, 1993 the board terminated Willis' employment. Willis alleges that discontinuance of the GIS project was the stated reason for his discharge but that the project has continued under Nickols' supervision. Willis complains that the county did not reassign him to other county employment for which he is qualified by virtue of education, experience and background.

About 9 months after he was discharged, Willis commenced this action against Sherburne County and Nickols alleging breach of contract by reason of termination of his employment without just cause, disability discrimination, defamation and interference with prospective advantage. The defendants moved for summary judgment on the ground that the court lacked subject matter jurisdiction because a petition for certiorari provides the exclusive means by which an employee can secure judicial review of the county's employment determination decision. The district court granted summary judgment dismissing Willis' claim for wrongful termination but also granted Willis' motion to amend his breach of contract count to assert what Willis characterizes as a "pure breach of contract claim." At the same time the district court denied summary judgment with respect to the claims of breach of contract, disability discrimination, defamation and intentional interference with prospective business advantage.

■ The defendants appealed denial of their motions for summary judgment.[1] The court of appeals affirmed the judgment of dismissal with respect to the claim of wrongful termination and the denial of summary judgment with respect to the claims of disability discrimination and defamation but reversed the denial of judgment dismissing the breach of contract claim.

We review the decision of the court of appeals on petitions of both Willis and the county. Willis seeks reversal of the dismissal of his breach of contract count, contending that *Dietz v. Dodge County,* 487 N.W.2d 237 (Minn.1992), should be overruled or substantially limited. The county, on the other hand, would have us extend the rule announced in *Dokmo v. Independent School Dist. No. 11,* 459 N.W.2d 671 (Minn.1990), and applied in *Dietz,* to include claims of defamation and discrimination arising out of the discharge of an employee of a local government.

Certainly, as the court of appeals recognized, there can be little doubt that the correct interpretation and application of *Dietz v.*

---

1. Although an order denying a motion to dismiss is generally nonappealable, an order denying a motion to dismiss for lack of jurisdiction is immediately appealable of right. *Hunt v. Nevada*

*State Bank,* 285 Minn. 77, 88–89, 172 N.W.2d 292, 299–300 (1969), *cert. denied,* 397 U.S. 1010, 90 S.Ct. 1239, 25 L.Ed.2d 423 (1970).

*Dodge County,* 487 N.W.2d 237 (Minn.1992), governs the disposition of the present case.

The circumstances giving rise to both the *Dietz* case and the present case are markedly similar. About 6 months after the county had terminated Ms. Dietz' employment, she commenced an action for wrongful discharge. About 9 months went by before Willis commenced this action in which he complained of wrongful discharge in a count entitled "Breach of Contract." In both cases the district court properly dismissed the claim for wrongful discharge. In the present case, however, the district court contemporaneously permitted Willis to amend his complaint to assert what he contends is a "pure" breach of contract claim. Following the erroneous trail laid down by the court of appeals in *Stadium v. Norman County,* 508 N.W.2d 217, 219 (Minn.App.1993), *pet. for rev. denied,* (Minn. Jan. 6, 1994) (holding *Dietz* inapplicable to a "pure breach of contract" claim), the district court ruled that Willis was not limited to review by certiorari and denied the defendants' motion for dismissal of the breach of contract count.

What the district court failed to recognize, however, is that *Dietz,* as well as Willis, brought an action grounded on breach of contract. Willis would have us render *Dietz* a victim of creative pleading: if the claimant *calls* it an action for wrongful discharge, he or she is limited to review by certiorari, but if the claimant *calls* the action one for breach of contract, the action is to be regarded as an ordinary action for failure to perform on a contract for goods or services. This despite the fact that the amendment of Willis' complaint consisted only of the following: "23. Willis's employment contract provided that Willis would not be terminated except for just cause" was amended to state "23. Willis' employment contract provided certain criteria for the [sic] Sherburne County to follow when terminating or laying off employees." The next paragraph of the complaint, "24. Sherburne County breached the employment

contract by terminating Willis without just cause" was amended to state "24. Sherburne County breached the employment contract by terminating Willis without following the procedures and policies set out in the employment contract." All other allegations of the complaint remain unchanged, including the allegations set out at paragraph 26: "26. As a result of the County's breach of contract, Willis has suffered lost wages and benefits in the past and will continue to lose wages and benefits in the future all in an amount to be proven at trial." Willis' prayer for relief also remains unchanged: he demands judgment ordering his reinstatement to a position with the county; awarding him back pay, front pay, and the value of lost fringe benefits including pension contributions, medical benefits and other benefits offered by the county, and awarding him damages for mental anguish caused by the defendant's wrongful acts. What Willis is really demanding is specific performance of his alleged employment agreement, a remedy which this court has observed is unavailable in an action for breach of an employment contract. *Bussard v. College of St. Thomas, Inc.,* 294 Minn. 215, 228, 200 N.W.2d 155, 163 (1972).

When *Dietz* is read as it was written, it is quite apparent that Dietz' complaint stated an action for breach of her employment contract. Dietz alleged that her employment contract provided that she could be discharged only "for cause" and she contended that the county had breached that contract by discharging her without cause. Therefore, she argued, she should have access to the courts to seek damages for such wrongful discharge. This court was not persuaded that framing the complaint as one for breach of contract avoided the necessity to proceed by writ of certiorari.

After remarking that the principles governing review of quasi-judicial decisions of executive bodies[2] had recently been reiterat-

---

2. The historical origin of the availability of review on certiorari of executive branch matters is found in *State ex rel. Ging v. Bd. of Educ. of Duluth,* 213 Minn. 550, 570–71, 7 N.W.2d 544, 556 (1942) (citations omitted), *overruled in part on other grounds,* where this court said:

Complete jurisdiction cannot, either directly or indirectly, be conferred upon the courts [to review school board decisions] in view of the constitutional division of the powers of government. [Y]et a limited jurisdiction by way of *certiorari,* and in some cases by statutory ap-

ed in *Dokmo v. Independent School Dist. No. 11*, 459 N.W.2d 671 (Minn.1990), we stated in *Dietz* that our decision was "informed by and consistent with *Dokmo*" although it was not dependent on *Dokmo*. *Dietz*, 487 N.W.2d at 239.

We then set out, in what we have regarded as reasonably straightforward language, four of the several reasons for our decision:

For several reasons we conclude that writ of certiorari was the only mechanism by which Dietz could obtain judicial review of the county's decision to terminate her employment. First, Dietz was not entitled by statute to appeal the decision by traditional means. The county, not having statewide jurisdiction, is not subject to the Minnesota Administrative Procedure Act, Minn.Stat. § 14.02, subd. 2 (1990), and no statute specifically provides appeal to the courts from an administrative decision to terminate a county nursing home administrator. *See, e.g.,* Minn.Stat. ch. 144A (1990); Minn.Stat. § 376.55, *et seq.* (1990).

Second, because of the nature of the board's action upon which this dispute centers, the standard of review on certiorari is more appropriate to a review of the exercise of the board's discretion than would be the standard of review of an independent proceeding. Her request for reinstatement and damages for mental anguish highlights the fact that her claim is not an ordinary action for failure to perform on a contract for goods or services. The cause of action alleged in Dietz's complaint would require the rights and liabilities of the parties to be fixed not by the terms of the contract, but by the propriety of the county's exercise of discretion in terminating her. *Compare Oikari v. Independent School Dist. No. 40*, 170 Minn. 301, 212

N.W. 598 (1927); *Backie v. Cromwell Consolidated School Distr. No. 13*, 186 Minn. 38, 242 N.W. 389 (1932) (actions for salary in which the plaintiffs alleged their employment contracts were for a specified term). The issue which Dietz would have the court review demands scrutiny of the manner in which the county has discharged its administrative function; the very type of scrutiny that runs a grave risk of usurping the county's administrative prerogative. Thus, to the extent that she has characterized her contract as requiring cause to dismiss, she has raised a threshold issue which at least arguably renders the county's termination decision quasi-judicial in nature, warranting the issuance of writ of certiorari. *See, e.g., State ex rel. Furlong v. McColl*, 127 Minn. [155] at 160, 149 N.W. 11 [(1914)]; *State ex rel. McGinnis [v. Police Civil Service Commission of Golden Valley]*, 253 Minn. [62] at 70–71, 91 N.W.2d 154 [(1958)].

Third, whether she entered into a "for cause" or "at will" employment contract is a question of law that is appropriate for review on certiorari. While the record in this case plainly falls short of a record generated in formal judicial proceedings, it is certainly adequate to ascertain the type of employment contract to which Dietz was a party.

Finally, in terms of practicality and cost, this case vividly illustrates the inappropriateness of permitting Dietz to obtain judicial review of the county's termination decision by way of a wrongful termination claim. A six-year statute of limitations, extensive discovery procedures, and a panoply of rules attend her cause of action. As a direct consequence, her wrongful ter-

peal, is conferred upon the courts. This is necessarily confined to questions affecting the jurisdiction of the board, the regularity of its proceedings, and, as to merits of the controversy, whether the order or determination in a particular case was arbitrary, oppressive, unreasonable, fraudulent, under an erroneous theory of law, or without any evidence to support it. A court cannot put itself in the place of the board, try the matter *de novo*, and substitute its findings for those of the board. Errors of the board committed within its jurisdiction are not subject to review. As said in

*Lindquist v. Abbett*, 196 Minn. 233, 240, 265 N.W. 54, 57, "executive officers as well as judges have a power to decide erroneously as well as rightly. There is a wide field wherein their decision, even though wrong, is final."

It is significant that the tenure act itself gives no right of appeal, leaving a discharged teacher only the right to a review by a prerogative writ; * * * "writs, such as certiorari, * * * cannot be used to review decisions purely of fact or to determine the weight of evidence, nor to review decisions based upon conflicting evidence."

mination claim remains unresolved and largely unexamined by the courts almost nine years after the termination of her employment.

*Dietz,* 487 N.W.2d at 239–40 (footnote omitted).

Just as in *Dietz,* Willis complains that the county breached his employment contract by failing to follow the termination and lay-off procedures specified in the county's employee handbook. Just as in *Dietz,* Willis requests reinstatement, back pay, lost fringe benefits, and front pay. Just as in *Dietz,* the cause of action Willis alleges does indeed require the rights and liabilities of the parties to be fixed by the propriety of the county's decision to discharge him.

Willis urges us to adopt the rationale of *Stadum v. Norman County,* 508 N.W.2d 217, 219 (Minn.App.1993), even though the fact that Stadum, unlike Willis, did not demand reinstatement may account for the decision in *Stadum.* Although we denied further review of the decision of the court of appeals in the *Stadum* case, we observe here that the *Stadum* decision does not represent a definitive statement of the law of Minnesota until adopted by this court, and we now specifically reject the rationale of *Stadum v. Norman County.*

█ Regardless that the claim is cloaked in the mantle of breach of contract, when the alleged breach of the employment contract of a governmental employee results in termination of the claimant's employment by an executive body which does not have statewide jurisdiction—for example, a county—the claimant may contest the employer's action by certiorari alone, absent statutory authority for a different process. Just as Ms. Dietz was required to proceed by writ of certiorari, so also is Willis.[3]

Willis would have us believe that his breach of employment contract count does not implicate the county's decision to dis-charge him. Just how a discharged employee can demonstrate the county's breach of termination and layoff procedures *without* implicating the county's decision to discharge escapes us. Furthermore, although reinstatement, back pay and fringe benefits may be available in the statutory action for alleged disability discrimination, the prayer for relief is not limited to the Human Rights Act count; the several counts are included in a single action which Willis clearly wants tried as a unit; and it seems to us singularly unlikely that wrongful termination and a demand for reinstatement, back pay and fringe benefits will not migrate from the discrimination claim to the "pure" breach of contract count. If, however, Willis demands bifurcation of his claims with his "pure" breach of contract tried by a jury, we note that the only prayer for relief set forth in his complaint is for reinstatement, back pay, fringe benefits and damages for mental anguish. So much for Willis' "pure" breach of contract action.

█ The county also contests the determination that the district court has subject matter jurisdiction over Willis' claims of defamation and disability discrimination. The county contends that the defamation and discrimination claims "arise out of a common nucleus of operative facts" which led to termination of Willis' employment and that, therefore, his only recourse lies in certiorari. As both the district court and court of appeals observed, however, the defamation Willis alleges occurred over a period of time which began more than a year before he was discharged and was separate and distinct from the termination of his employment. We agree with the court of appeals' conclusion that because the district court's "necessary inquiry into what the county board knew about the truth or falsity of those letters before publishing them to a third party will not involve any inquiry into the county board's discretionary decision to terminate

---

3. The dissent treats *Dietz* as if it deprives Willis of a remedy. It does not; it simply specifies the appropriate remedy—a timely writ of certiorari. That Willis failed to seek the proper remedy in a timely fashion cannot be laid at the door of *Dietz* or its predecessors. Because *Dietz* applied a principle adopted not later than 1942, *State ex rel. Ging v. Board of Educ. of Duluth,* 213 Minn. 550, 7 N.W.2d 544 (1942), *overruled in part on other grounds,* and reaffirmed in 1990, *Dokmo v. Independent Sch. Dist. No. 11,* 459 N.W.2d 671 (Minn.1990), *Dietz* cannot be said to have announced a new rule nor should its holding have come as a surprise.

Willis," Willis' common law defamation action does not fall within the principle explicated in *Dietz*.

■ Finally, we agree that Willis' claim of disability discrimination proscribed by the Minnesota Human Rights Act is not limited to review by certiorari. *See* Minn.Stat. § 363.03, subd. 2 (1992). Minn.Stat. § 363.14, subd. 2 (1992) provides that an action for disability discrimination may be brought in district court. Unlike Ms. Dietz, who had no statutory right to appeal the county board's termination decision by traditional means, Willis has available a statutory cause of action pursuant to the Human Rights Act.

Although the county's assertion that Willis' disability discrimination claim has been included in order to obtain judicial review of the county's decision to discharge him may be correct, we are constrained to point out that the Minnesota Human Rights Act's prohibition against employment discrimination is applicable to the state and its political subdivisions as well as to private sector employers. Minn.Stat. § 363.01, subd. 28 (1992). Moreover, in *Graham v. Special Sch. Dist. No. 1*, 472 N.W.2d 114 (Minn.1991), this court held that when a school board was required to judge not only an employee's conduct but also whether the school district itself had engaged in unlawful discrimination against the employee, the discharged employee was entitled to pursue her retaliatory discharge action. Accordingly, even though prosecution of the alleged violation of the Minnesota Human Rights Act may implicate at least some aspects of the decision to discharge Willis, we affirm the determination that the district court has subject matter jurisdiction of Willis' disability discrimination action pursuant to the Minnesota Human Rights Act.

Affirmed and remanded to the district court for further proceedings in accordance with this opinion.

KEITH, Chief Justice, dissenting.

I concur in the majority's judgment that Willis' defamation and disability discrimination claims do not fall within the scope of our decision in *Dietz v. Dodge County*, 487 N.W.2d 237 (Minn.1992). However, I must respectfully dissent from the majority's conclusion that Willis' breach of contract claim is controlled by *Dietz*.

While Willis concedes that *Dietz* bars a public employee from contesting the basis for his or her termination in district court, he maintains that his breach of contract claim would not require the district court to evaluate the propriety of the County's decision, and therefore he is not limited to the writ of certiorari procedure. I agree. As stated in *Dietz*, judicial review of quasi-judicial decisions by administrative bodies must be invoked by writ of certiorari. *Id.* at 239. Moreover, review by certiorari is available only when no other adequate method of review or legal remedy exists. *Id.* The limited review mandated by certiorari is motivated by separation of powers concerns. *Id.* When an employee raises an issue limited to interpretation of the provisions of his or her employment contract, however, such concerns are not ordinarily implicated. I do not believe this court's holding in *Dietz* was intended to give governmental bodies the right to breach their employment contracts free from judicial intervention. As Willis warns, such an application of the writ of certiorari procedure would, in effect, make "second class citizens" out of public employees.

Here, Willis' Amended Complaint, which was accepted and acknowledged by the district court in its January 18, 1995 order, alleges that Willis' employment contract required the County to follow certain termination and lay-off procedures.[1] These procedures were not followed, asserts Willis, and

1. The court of appeals may have relied upon Willis' original Complaint, dated March 1, 1994, to support its conclusion that Willis was raising a wrongful termination claim. While Willis' original Complaint states that his employment contract required "just cause" to terminate his employment and alleges that he was wrongfully discharged, his Amended Complaint, dated January 25, 1995, simply cites the County's failure to follow its own termination and lay-off procedures and policies, as specified in the County's employee handbook. Thus, Willis' Amended Complaint is properly limited to a breach of contract issue and does not fall under this court's holding in *Dietz* that an employee's wrongful termination claim could be reviewed by the district court only on timely writ of certiorari. *See Dietz*, 487 N.W.2d at 238–39.

therefore the County must compensate him with monetary damages. This assertion does not require the district court to delve into the County's justifications for terminating Willis' employment, and therefore falls outside the scope of this court's decision in *Dietz*.[2] *See id.* at 239–41.

Willis' Amended Complaint against Sherburne County raises a breach of contract issue by alleging that the County did not follow the lay-off procedures identified in its employee handbook when it terminated Willis' employment, and seeks monetary damages as a result. While it is true that Willis' prayer for relief requests reinstatement, back pay, and lost fringe benefits, these are remedies made available to him under his disability discrimination claim and should not be interpreted as indications of a wrongful termination claim "in disguise." *See* Minn. Stat. §§ 363.071, subd. 2, 363.14 (1994). Therefore, as I interpret our holding in *Dietz*, Willis is entitled to pursue monetary damages from the County for breach of contract because the factual reasons underlying his employment termination will not be at issue.

Because I believe *Stadum v. Norman County*, 508 N.W.2d 217, 219 (Minn.App. 1993), *pet. for rev. denied* (Minn. Jan. 6, 1994), faithfully construes our decision in *Dietz*, I would reverse that portion of the court of appeals' opinion granting summary judgment to the County on Willis' breach of contract claim.

GARDEBRING, Justice, dissenting.

I join the dissent of Chief Justice Keith.

PAGE, Justice, dissenting.

I join the dissent of Chief Justice Keith.

---

2. I take issue with the majority's characterization of Willis' Amended Complaint as "creative pleading." The district court in this case applied the appropriate standards when considering Willis' motion to amend his complaint, and the County has not challenged this portion of the district court's order on appeal. Rule 15.01 of the Rules of Civil Procedure expressly states that leave to amend a pleading "shall be freely given when justice so requires." Willis' motion for amendment in this case was made before the completion of discovery; thus, the district court concluded that the County would not be prejudiced by the addition of a breach of contract claim. Accordingly, there is no reason to penalize Willis for amending his complaint at this stage of the appellate process.