Robert SHAW, Appellant,

v.

**BOARD OF REGENTS OF the UNIVERSITY OF MINNESOTA,**
Respondent.

No. C8–98–1495.

Court of Appeals of Minnesota.

May 11, 1999.

Review Denied July 28, 1999.*

---

* PAGE, J., took no part in the consideration or decision of this case.

Daniel W. Schermer, Judith K. Schermer, Schermer & Schermer, P.A., Minneapolis, for appellant.

Mark B. Rotenberg, General Counsel, University of Minnesota, Tracy M. Smith, General Counsel, Minneapolis, for respondent.

Steve G. Heikens, Minneapolis, for amicus curiae Minnesota Trial Lawyers Association.

Considered and decided by HARTEN, Presiding Judge, RANDALL, Judge, and SHUMAKER, Judge.

## OPINION

RANDALL, Judge

Appellant challenges the district court's decision that it lacked subject matter jurisdiction over appellant's breach of contract claim and challenges the district court's

subsequent dismissal of appellant's breach of contract claim and grant of judgment notwithstanding the verdict (JNOV) to respondent. Respondent asserts that even if the district court erred in determining that it lacked subject matter jurisdiction, respondent was still entitled to JNOV, a new trial, or remittitur of damages. We affirm on all issues.

## FACTS

The University of Minnesota employed appellant Robert Shaw as a project manager in the Construction Department of the Facilities Management Division from September 1991 to December 1994. Beginning October 11, 1993, Shaw filed approximately 13 grievances with the university. He withdrew all of his grievances in April 1995 after he grew frustrated with the university's failure to address them.

On February 21, 1994, William O'Neill, Shaw's immediate supervisor, gave Shaw an oral warning for inappropriate behavior. Shaw received a written warning and a three-day suspension on May 31, 1994, for failure to be accurate and timely in his work and for inappropriate behavior. Shaw took authorized sick leaves of varying lengths in May, June, July, and August 1994, due to depression. On August 19, 1994, Shaw sent a letter to an associate vice president of human resources stating that he was continually being harassed by the Facilities Management Division and requesting an accommodation until his grievances were resolved. In an August 26, 1994, letter from O'Neill, Shaw was notified that he was being placed on an involuntary, unpaid medical leave of absence.

The Facilities Management director of operations, Robert Schenkel, sent Shaw a termination letter November 23, 1994. Schenkel informed Shaw that when his 12–week medical leave of absence expired on November 30, he would be placed on unpaid leave until his termination on December 9. The letter stated that Shaw was being terminated because he could not perform his current job responsibilities and because of unsatisfactory performance. Shaw filed a grievance appealing his termination. He withdrew this grievance, along with his other grievances, in April 1995 and commenced this action in district court in September 1995.

Shaw brought this action against respondent Board of Regents of the University of Minnesota (the university) asserting (a) breach of his employment contract with the university; (b) discrimination in violation of the Minnesota Human Rights Act (MHRA) and the American with Disabilities Act (ADA); (c) retaliation in violation of the MHRA; (d) violation of the whistle-blower statute; (e) defamation; (f) intentional infliction of mental distress; and (g) negligent supervision. The district court granted summary judgment on Shaw's whistleblower and intentional infliction of mental distress claims, and Shaw withdrew his defamation and negligent supervision claims.

Shaw's breach of contract and ADA claims were tried to a jury, and Shaw's MHRA claims were tried to the district court. The district court concluded that Shaw was not a "qualified disabled person" within the meaning of the MHRA and that the university did not violate the MHRA. The jury returned a special verdict form stating that the university breached its employment contract with Shaw by terminating him without just cause. The jury awarded Shaw $532,933 in damages. The jury went on to conclude that Shaw was a qualified disabled person as defined by the ADA but that Shaw did not request a reasonable accommodation that would have permitted him to do his job. The jury also concluded that the university did not intentionally discriminate against Shaw based on his disability or retaliate against him because he complained of discrimination or requested an accommodation.

The university then sought JNOV, a new trial, or remittitur of damages. The district court dismissed Shaw's breach of

contract claim and granted the university JNOV after determining that the district court did not have subject matter jurisdiction over Shaw's breach of contract claim. The district court concluded that Shaw could challenge his termination only by petitioning this court for a writ of certiorari. The court also ruled that if JNOV was reversed or vacated on appeal, the university's motion for a new trial was denied.

## ISSUES

1. Did the district court have subject matter jurisdiction over appellant's breach of contract claim?

2. If the district court had subject matter jurisdiction over appellant's breach of contract claim, was the university entitled to JNOV, a new trial, or remittitur of damages?

## ANALYSIS

### I.

■ The existence of subject matter jurisdiction is a question of law, which this court reviews de novo. *Federal–Hoffman, Inc. v. Fackler*, 549 N.W.2d 93, 96 (Minn. App.1996), *review denied* (Minn. Aug. 20, 1996). "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Minn. R. Civ. P. 12.08(c).

### A. Applicability of Review on Writ of Certiorari

■ Writ of certiorari is the appropriate method of review for an administrative body's quasi-judicial decisions. *Dietz v. Dodge County* 487 N.W.2d 237, 239 (Minn. 1992). "Termination of a public employee is a quasi-judicial decision." *Mowry v. Young*, 565 N.W.2d 717, 719 (Minn.App. 1997), *review denied* (Minn. Sept. 18, 1997).

Shaw asserts that he should not have been required to seek review by writ of certiorari because he did not play a direct or specialized role in performing the func-

tions the university was established to perform. He notes that application of the rule to him would mean that all university employees are subject to the certiorari requirement.

■ The supreme court has not recognized the distinction that Shaw attempts, and we decline to recognize it now. The rule that certiorari is the exclusive method of reviewing the termination decisions of a quasi-judicial administrative body has been applied in a variety of cases. *See, e.g., Willis v. County of Sherburne*, 555 N.W.2d 277, 282 (Minn.1996) (involving termination of county department director); *Dietz*, 487 N.W.2d at 239 (involving termination of nursing home administrator); *Dokmo v. Independent Sch. Dist. No. 11*, 459 N.W.2d 671, 673 (Minn.1990) (involving termination of teacher); *Mowry*, 565 N.W.2d at 720 (termination of police reserve unit member). In each case, application of the rule turned only on the fact that an administrative body terminated an employee and was not based on the type of position held by that employee. There is no support for Shaw's argument that the nature of his employment renders the rule inapplicable.

Amicus asserts that this court should reconcile an inconsistency in the caselaw as to whether petitions for writ of certiorari are appropriate when contesting a breach of an employment contract with the University of Minnesota. Amicus notes that this court stated in *Zahavy v. University of Minnesota*, 544 N.W.2d 32, 42 (Minn.App.1996), *review denied* (Minn. May 9, 1996), that a former university employee's breach of contract claim should be initiated in district court. Similarly, in *Harford v. University of Minnesota*, 494 N.W.2d 903, 906 (Minn.App.1993), *review denied* (Minn. Mar. 30, 1993), this court stated that the university lacked jurisdiction to decide a breach of employment contract claim and that, therefore, the claim was not barred from being brought in district court.

As the university correctly observes, however, *Zahavy* and *Harford* were decided prior to the supreme court's decision in *Willis*. *Willis* overruled this court's decision in *Stadum v. Norman County*, 508 N.W.2d 217, 219 (Minn.App.1993), *review denied* (Minn. Jan. 6, 1994), which held that writ of certiorari was inappropriate where a former employee raised a "pure breach of contract claim." *See Willis*, 555 N.W.2d at 282 ("we now specifically reject the rationale of *Stadum v. Norman County* "). If there was formerly confusion in this area, current law is consistent.

Amicus also asserts that certiorari is not appropriate for review of a claim against the university because the university does not have statewide jurisdiction. As amicus noted, *Willis* states:

> [W]hen the alleged breach of the employment contract of a governmental employee results in termination of the claimant's employment by an executive body which *does not have statewide jurisdiction*—for example, a county—the claimant may contest the employer's action by certiorari alone, absent statutory authority for a different process.

*Willis*, 555 N.W.2d at 282 (emphasis added).

■ However, the reference in *Willis* to statewide jurisdiction refers only to the fact that the decision does not apply to state agencies because those agencies are governed by the Minnesota Administrative Procedures Act (MAPA), Minn.Stat. ch. 14 (1998). *See Dietz*, 487 N.W.2d at 239 (stating former county employee not subject to MAPA because county does not have statewide jurisdiction). Pursuant to Minn. Stat. § 14.03, subd. 1(f), the university is not subject to MAPA, and no statute specifically permits the appeal from an administrative decision to terminate a university employee. Therefore, certiorari pursuant to Minn.Stat. § 606.01 (1998) is the only method available for review of a university decision. *See Dietz*, 487 N.W.2d at 239 (holding writ of certiorari only available mechanism for review of county's decision

to terminate employee because county not subject to MAPA and no statute provided for appeal).

## B. Retaliation Claim

■ Shaw further claims that the district court had jurisdiction here because he raised a retaliation claim under the Public Employment Labor Relations Act (PELRA), Minn.Stat. ch. 179A (1998). Although he concedes that his complaint asserted only that the alleged retaliation violated the MHRA and not PELRA, he argues that he "unquestionably pleaded a case under [PELRA]." He insists that the jury returned a verdict in his favor on the issue.

PELRA was enacted "in part, to protect public employees from unfair labor practices." *Edina Educ. Ass'n v. Board of Educ. of Indep. Sch. Dist. No. 273*, 562 N.W.2d 306, 310–11 (Minn.App.1997) (citations omitted), *review denied* (Minn. June 11, 1997). Pursuant to PELRA:

> Any employee * * * aggrieved by an unfair labor practice as defined in this section may bring an action for injunctive relief and for damages caused by the unfair labor practice in the district court of the county in which the practice is alleged to have occurred. A copy of any complaint alleging an unfair labor practice must be filed with the commissioner at the time it is brought in district court. The party bringing an unfair labor practice action in district court shall also transmit to the commissioner any orders or judgment of the court within ten days of the order or judgment.

Minn.Stat. § 179A.13, subd. 1 (1998).

Despite Shaw's assertion that "the jury returned a verdict favorable to the plaintiff on the issue," the only question relating to retaliation on the special verdict form asked:

> Did the University of Minnesota retaliate by taking adverse employment action against Robert Shaw because he complained of discrimination prohibited

by the ADA or requested an accommodation?

The jury answered the question *in the negative.* In its instructions on just cause for termination, the district court informed the jury:

> Any retaliation for Robert Shaw's filing of grievances may be taken into account in determining whether the University had just cause to terminate his employment.

The jury was not instructed, however, that it *must* find retaliation to conclude that the university did not have just cause.

The jury here was never asked to decide a PELRA claim. Additionally, there is no evidence that Shaw complied with the procedural requirement for filing a proper action under PELRA. We conclude Shaw's argument that this is a PELRA action is without merit.

## C. Administrative Record

 Finally, Shaw argues that the absence of a record here is "fatal." Contrary to Shaw's argument, an incomplete record does not change the fact that writ of certiorari is the appropriate method of review.

A hearing is not required to petition for writ of certiorari. *See Dokmo,* 459 N.W.2d at 675 ("A court acts in an appellate capacity by reviewing the school board's *record,* whatever that record might be, *regardless of whether a hearing was provided below.*"). Although a hearing is not required, an administrative body is required to maintain a record. *Neighborhood Sch. Coalition v. Independent Sch. Dist. No. 279,* 484 N.W.2d 440, 441 (Minn. App.1992), *review denied* (Minn. June 30, 1992). The absence of a complete record, however, does not entitle the former employee to bring an action in district court rather than by writ of certiorari. *See Dokmo,* 459 N.W.2d at 677 (stating school district's obligation to support decision arises only when "teacher has used the proper procedure for appealing the board's

decisions, which is a writ of certiorari"). If the record is lacking, on writ of certiorari this court may determine that the agency has not "met its burden of proving substantial evidence supporting its decision or the case may [be] remanded for additional findings." *Id.*

## II.

The university filed a notice of review and asserted that the district court erred in concluding in the alternative that if the university did have subject matter jurisdiction over Shaw's contract, the university was not entitled to a new trial. Because we affirm the district court's determination that it did not have subject matter jurisdiction and the district court's entry of JNOV on that basis, we need not address the district court's alternative holding. We note, however, that in viewing the evidence in the light most favorable to the verdict, the jury's verdict was not "manifestly and palpably contrary to the evidence" and the damages award was not excessive. *Zum-Berge v. Northern States Power Co.,* 481 N.W.2d 103, 110 (Minn.App.1992), *review denied* (Minn. Apr. 29, 1992); *see also* Minn. R. Civ. P. 59.01(e) (stating new trial may be granted if excessive damages are awarded that appear "to have been given under the influence of passion or prejudice").

## DECISION

We do not condone the university's decision to wait until after the verdict before bringing a motion to dismiss Shaw's breach of contract claim for lack of subject matter jurisdiction. Having said that, we affirm the district court's conclusions that it did not have jurisdiction. A breach of contract claim based on a termination decision by the University of Minnesota is reviewed only on a writ of certiorari.

**Affirmed.**