Thomas MAYE, Appellant,

v.

UNIVERSITY OF MINNESOTA,
Respondent.

No. C7–00–2.

Court of Appeals of Minnesota.

Aug. 1, 2000.

Lynn Klicker Uthe, Susan A. Cragg, Lynn Klicker Uthe, Ltd., Minnetonka, for appellant.

Andrew D. Parker, Matthew E. Johnson, Smith Parker, PLLP, Minneapolis, for respondent.

Considered and decided by KLAPHAKE, Presiding Judge, KALITOWSKI, Judge, and STONEBURNER, Judge.

## OPINION

STONEBURNER, Judge.

Appellant was a plaintiff in an earlier racial-discrimination lawsuit that settled. In a subsequent action, he alleged that the terms of the settlement contract were breached. The district court dismissed this claim, ruling that it lacked subject-matter jurisdiction because a writ of certiorari was the proper way to review the claim. Following a trial on the remaining claim, judgment was entered. This appeal of the dismissal of appellant's breach of contract claim followed.

## FACTS

Appellant Thomas Maye worked as a Protection Services Officer for the University of Minnesota (the University) hospital from 1985 to 1996. In 1988, Maye and two other black employees sued the University for race discrimination. The case settled in 1991. In the settlement agreement, the University stipulated that it would give Maye "due consideration" for all subsequent promotions, which would be posted in the normal manner. The agreement also provided that the University would not retaliate against Maye for bringing the suit.[1]

In 1992, the University advertised the position of Director of Protection Services, the highest management position in Maye's department. Considering it a promotion opportunity, Maye applied for the position. The University hired an executive search firm to recruit and screen candidates. The search firm determined that Maye was not qualified for the position. Maye was not interviewed for the position. The University eventually hired Rev. William A. Watson, III, a black man with extensive experience in security and management.

Maye requested and took two leaves of absence in 1994. The first was to care for his sick father, but during the second, Maye worked for the Minnesota Department of Corrections as a Security Case Manager. The University's leave policy does not provide for absences to pursue other employment. Rev. Watson became aware of Maye's outside employment during his leave of absence, but did nothing.

In December 1994, the University posted two openings for Global Supervisor positions in Maye's department. Again, recognizing a promotion opportunity, Maye submitted an application. The interview panel consisted of Rev. Watson and two other managers who had both been defendants in Maye's previous lawsuit against the University. Rev. Watson, however, had the final hiring authority. The panel identified the qualities they wanted in a Global Supervisor and prepared eight open-ended questions and four situational questions to ask candidates. They asked each candidate all eight open-ended questions, one situational question chosen randomly and some basic questions about why the candidate wanted the job. The panel also created a scoring system to rate the candidates on various qualities.

---

1. The settlement agreement also required the University to maintain a diversity council. The University abolished the council, but appellant did not include this issue in his appeal.

Maye was selected to be interviewed by the panel. The panel also interviewed five other Protection Services Officers for the position. The two candidates who were promoted are both white men. They received the highest scores from each member of the panel and received substantially higher scores from Rev. Watson than Maye did.

On December 31, 1996, the University sold the hospital and the new owner contracted out for security services. Therefore, as of January 1, 1997, all Protection Services Officer positions at the hospital were eliminated and Maye and about 12 others lost their jobs.

In January 1998, Maye brought this action in district court. He alleged two counts: (1) the University violated the Minnesota Human Rights Act (MHRA) by denying Maye promotions in 1992 and 1995 because of his race and his previous lawsuit; and (2) the University breached its contract by failing to give Maye "due consideration" for the 1992 and 1995 promotions and retaliating against him. The district court dismissed Maye's breach of contract claim for lack of subject-matter jurisdiction. After a bench trial, the district court decided the remaining claim in favor of the University, making numerous findings of fact against Maye. Maye appeals the district court's dismissal of his breach of contract claim, arguing the court had subject-matter jurisdiction to consider the claim because the University's actions were not quasi-judicial.

## ISSUE

Did the district court have subject-matter jurisdiction over Maye's breach of contract claim against the University?

## ANALYSIS

■ This court is not bound by a trial court's decision on a purely legal issue. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984). Whether subject-matter jurisdiction exists is a question of law this

court reviews de novo. *Federal–Hoffman, Inc. v. Fackler,* 549 N.W.2d 93, 96 (Minn. App.1996), *review denied* (Minn. Aug. 20, 1996). "Whenever it appears * * * that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Minn. R. Civ. P. 12.08(c). When no statutory authority exists for judicial review of a quasi-judicial administrative agency decision, judicial review is limited to review by certiorari. *Neitzel v. County of Redwood,* 521 N.W.2d 73, 75 (Minn.App.1994) (citing *Plunkett v. First Nat'l Bank,* 262 Minn. 231, 245–46, 115 N.W.2d 235, 245 (1962)), *review denied* (Minn. Oct. 27, 1994).

■ The University is part of the executive branch of state government, and as such, its decisions are given deference by this court under the principle of separation of powers. *See Dokmo v. Independent Sch. Dist. No. 11,* 459 N.W.2d 671, 674 (Minn.1990) (applying separation of powers to school districts). In *Shaw v. Board of Regents,* we held that: "certiorari pursuant to Minn.Stat. § 606.01 (1998) is the only method available for review of a university decision." *Shaw v. Board of Regents,* 594 N.W.2d 187, 191 (Minn.App. 1999). Relying on the Minnesota Supreme Court's decision in *Willis v. County of Sherburne,* 555 N.W.2d 277, 282 (Minn. 1996), this court held that petitions for writ of certiorari are appropriate when an employee raises a "pure breach of contract" claim. *Shaw,* 594 N.W.2d at 191. The supreme court in *Willis* held that:

> Regardless that the claim is cloaked in the mantle of breach of contract, when the alleged breach of the employment contract of a governmental employee results in termination of the claimant's employment by an executive body which does not have statewide jurisdiction * * * the claimant may contest the employer's action by certiorari alone, absent statutory authority for a different process.

*Willis,* 555 N.W.2d at 282.

In *Dietz v. Dodge County,* 487 N.W.2d 237 (Minn.1992), the supreme court noted that

[t]he issue which Dietz would have the court review· demands scrutiny of the manner in which the county has discharged its administrative function; the very type of scrutiny that runs a grave risk of usurping the county's administrative prerogative. Thus, to the extent that she has characterized her contract as requiring cause to dismiss, she has raised a threshold issue which at least arguably renders the county's termination decision quasi-judicial in nature, warranting the issuance of writ of certiorari.

*Id.* at 240.

■ In the present case, Maye argues that the district court had jurisdiction over his breach of contract claim because it does not implicate any quasi-judicial decision by the University. The settlement provisions Maye claims were breached are that Maye "will be given due consideration for any promotional opportunities that come up within the hospital security department" and "there will not be any retaliation against [Maye] as a result of this litigation." Both provisions apply to Maye's employment relationship with the University and implicate the University's internal administrative functions. *See Dietz*, 487 N.W.2d at 240 (holding review of administrative function requires writ of certiorari).

■ A quasi-judicial decision need not be made by a commission or a board; one "public officer" can make it. *Neitzel*, 521 N.W.2d at 75. So, the fact that only one person at the University was ultimately responsible for making the promotion decisions does not disqualify the decisions as quasi-judicial acts. Also, a hearing creating a record of the decision-making process is not a prerequisite to review by writ of certiorari. *Dokmo*, 459 N.W.2d at 675–76.

The Minnesota Supreme Court has summarized the indicia of quasi-judicial actions as

(1) investigation into a disputed claim and weighing of evidentiary facts;

(2) application of those facts to a prescribed standard; and

(3) a binding decision regarding the disputed claim.

*Minnesota Ctr. for Envtl. Advocacy v. Metropolitan Council*, 587 N.W.2d 838, 842 (Minn.1999); *see also Neitzel*, 521 N.W.2d at 75 (defining quasi-judicial acts as administrative acts of investigating and considering evidentiary facts to make judgements requiring exercise of discretion). The supreme court decision that first narrowed the definition to include these three indicia ultimately defined a quasi-judicial action as "a decision which determines the rights of contending parties and is binding upon them." *Meath v. Harmful Substance Comp. Bd.*, 550 N.W.2d 275, 280 (Minn.1996).

Maye alleges he was not given the consideration required by the settlement agreement, which he construes as an employment contract. The only reason we examine the University's promotion decision is because of Maye's breach of contract claim. In these limited circumstances, we find the University's promotion decision is a quasi-judicial action. The University created a standard by identifying the qualities required for the position to be filled. Then the University investigated its options by collecting and reviewing applications and interviewing candidates. It applied the criteria to the information provided by the candidates, and using its discretion, made a binding decision not to promote Maye. The University's promotion process was an administrative function requiring discretion and thus resulted in a quasi-judicial decision. *See, e.g., Bahr v. City of Litchfield*, 420 N.W.2d 604, 606 (Minn. 1988) (applying other sections of writ-of-certiorari statute to review of promotion decisions); *Neitzel*, 521 N.W.2d at 75 (holding a decision to deny conditional-use permit is quasi-judicial decision because it required determination of facts and exercise of discretion). Because the

University's actions in this case were quasi-judicial, certiorari in this court was the only available method of review.

Review of Maye's retaliation claims based on the University denying him promotions is also limited to certiorari. For any retaliation claims not tied to the University's promotion decisions, Maye chose his remedy by pursuing an action under the MHRA, and he is barred from bringing a separate breach of contract action by the MHRA's exclusivity provision. Minn. Stat. § 363.11 (1998).

## DECISION

The University's decisions not to promote Maye were quasi-judicial decisions arrived at through administrative processes. Maye's breach of contract claims would be impossible to examine without reviewing the internal management decisions of the University. Therefore, a writ of certiorari was the only avenue available for Maye to seek review of the University's actions.

Affirmed.