James R. WILLIAMS, Appellant,

v.

The BOARD OF REGENTS OF The UNIVERSITY OF MINNESOTA, et al., Respondents.

No. A08–0765.

Court of Appeals of Minnesota.

March 31, 2009.

Donald Chance Mark, Jr., Anthony Gabor, Alyson M. Palmer, Jennifer S. Pirozzi, Fafinski Mark & Johnson, P.A., Eden Prairie, MN; and Richard G. Hunegs, Hunegs Stone LeNeave Kvas & Thornton, P.A., Minneapolis, MN, for appellant.

Mark B. Rotenberg, Brian J. Slovut, University of Minnesota, Minneapolis, MN, for respondent.

Considered and decided by MINGE, Presiding Judge; LARKIN, Judge; and STAUBER, Judge.

## OPINION

MINGE, Judge.

Appellant challenges the dismissal on the pleadings of certain employment-related claims against respondent Board of Regents of the University of Minnesota and the university's athletic director, respondent Joel Maturi. Because we conclude that the district court correctly determined that judicial consideration of appellant's estoppel counts is only available by writ of certiorari and that appellant's constitutional counts failed to present a claim for which relief could be granted, we affirm in part. Because we conclude that the district court erred in determining at the pleadings stage that appellant's common-law negligent-misrepresentation claim is limited to certiorari review, we reverse in part and remand.

## FACTS

Appellant James Williams was an assistant coach for Oklahoma State University

(OSU) from 2004 to April 2007. Appellant alleges that, on April 2, 2007, the head coach of the University of Minnesota men's basketball team, Orlando "Tubby" Smith, verbally offered appellant a position as an assistant coach of the university men's basketball team with an annual salary of $200,000. Appellant immediately accepted the offer and informed Smith that he was tendering his resignation to OSU. At the time of his resignation, appellant had a year remaining on his contract with OSU. Appellant alleges that, in reliance on the offer, he also made arrangements to sell his Oklahoma home and move to Minnesota.

Appellant alleges that the university held Smith out as having express or implied authority to hire assistant coaches for the university men's basketball team. The complaint further alleges that Smith's offer and appellant's acceptance created an enforceable contract that was subsequently breached by the university and its athletic director, respondent Joel Maturi. Following the alleged breach, appellant alleges that Maturi, individually or under his authority as an employee of the university, made defamatory statements in local media outlets by denying that Smith hired appellant and suggesting that the reason that appellant was not hired was because of decades-old NCAA infractions. Following Maturi's comments to the media, appellant alleges that he made multiple attempts to discuss matters with Maturi. Appellant's requests to meet and discuss the matter with Maturi were denied.

On September 25, 2007, appellant commenced an action against the Board of Regents of the university and against Maturi, both individually and in his capacity as the athletic director. Appellant's amended complaint contains numerous counts including: (1) breach of contract—specific performance; (2) breach of contract—money damages; (3) promissory estoppel; (4) equitable estoppel; (5) intentional interference with contractual relations; (6) negligent misrepresentation; (7) negligence; (8) defamation per se; (9) vicarious liability/respondeat superior; (10) violation of property rights pursuant to 42 U.S.C. § 1983—injunctive relief; (11) violation of property rights pursuant to 42 U.S.C. § 1983—money damages; (12) violation of liberty rights pursuant to 42 U.S.C. § 1983—injunctive relief; and (13) violation of liberty rights pursuant to 42 U.S.C. § 1983—money damages.

Respondents moved to dismiss appellant's action on the basis that the district court lacked jurisdiction to review appellant's common-law counts and that appellant's common-law and constitutional (section 1983) counts failed to set forth a legally sufficient claim for relief. The district court concluded that because the university's employment decisions are subject only to certiorari review in the court of appeals, the district court did not have jurisdiction to hear the common-law counts and granted respondents' motion to dismiss based on the pleadings. The district court further concluded that the constitutional (section 1983) counts, although within the district court's jurisdiction, failed to state a legally cognizable claim. This appeal follows.

## ISSUES

I. Did the district court err in ruling that it did not have subject-matter jurisdiction over appellant's common-law counts for promissory estoppel, equitable estoppel, and negligent misrepresentation?

II. Did the district court err in dismissing appellant's constitutional counts for failure to state a claim for which relief can be granted?

## ANALYSIS

 This appeal challenges the district court's dismissal of certain of appellant's claims by entry of judgment on the pleadings. A party may move for judgment on the pleadings if a complaint fails to set forth a legally sufficient claim for relief. Minn. R. Civ. P. 12.03. In deciding such motions, the district court must take the facts alleged in the complaint as true and draw all inferences in favor of the nonmoving party. *Bodah v. Lakeville Motor Express, Inc.*, 663 N.W.2d 550, 553 (Minn.2003) (reviewing dismissal on the pleadings for failure to state a claim under Minn. R. Civ. P. 12.02). On review, the appellate court must review the judgment on the pleadings de novo, *id.*, and determine only "whether the complaint sets forth a legally sufficient claim for relief," *Barton v. Moore*, 558 N.W.2d 746, 749 (Minn.1997).[1]

### I.

 The first issue is whether the district court erred in ruling that it did not have subject matter jurisdiction over appellant's common-law claims for promissory estoppel, equitable estoppel, and negligent misrepresentation. Whether a court has subject-matter jurisdiction is a question of law and is reviewed de novo. *Burkstrand v. Burkstrand*, 632 N.W.2d 206, 209 (Minn.2001).

 "The University is part of the executive branch of state government, and as such, its decisions are given deference by this court under the principle of separation of powers." *Maye v. Univ. of Minn.*, 615 N.W.2d 383, 385 (Minn.App. 2000); *see also Dokmo v. Indep. Sch. Dist. No. 11*, 459 N.W.2d 671, 674 (Minn.1990) (applying the principle of separation of

powers to school districts). Issuance of a writ of certiorari by the court of appeals pursuant to Minn.Stat. § 606.01 (2008) is "the only method available for review of a university [employment termination] decision." *Shaw v. Bd. of Regents of Univ. of Minn.*, 594 N.W.2d 187, 191 (Minn.App. 1999). The rule that certiorari is the exclusive method of reviewing the termination decisions of a state agency or local unit of government as a quasi-judicial administrative body has been applied in a variety of cases. *Id.* at 190 (citing *Willis v. County of Sherburne*, 555 N.W.2d 277, 282 (Minn.1996) (involving termination of county department director); *Dietz v. Dodge County*, 487 N.W.2d 237, 239 (Minn.1992) (involving termination of nursing home administrator); *Dokmo*, 459 N.W.2d at 673 (involving termination of teacher); *Mowry v. Young*, 565 N.W.2d 717, 719 (Minn.App.1997) (termination of police reserve unit member), *review denied* (Minn. Sept. 18, 1997)).

 The characterization of a claim in a complaint does not change the jurisdictional analysis. *Willis*, 555 N.W.2d at 282. "In the absence of a statute providing for a different process, the dispositive question is whether the claim implicates an executive body's decision to terminate an employee." *Lueth v. City of Glencoe*, 639 N.W.2d 613, 617 (Minn.App.2002), *review denied* (Minn. Apr. 16, 2002). In examining tort claims against the university, this court has held that "[t]he pertinent question becomes whether the claim is 'separate and distinct from the termination of ... employment' or whether the claim arises out of a common nucleus of operative facts." *Grundtner v. Univ. of Minn.*, 730 N.W.2d 323, 332 (Minn.App.2007) (cit-

---

1. The record in this proceeding includes more than the pleadings. Because the district court and the parties expressly addressed the issue now on appeal as a rule 12 question and did not consider the larger record, we similarly limit our consideration.

ing *Willis*, 555 N.W.2d at 282). This court looks to see if an inquiry into the facts surrounding a tort claim would necessarily involve an inquiry into the discretionary decision of the university to terminate an individual. *Id.* (holding that the district court did not have jurisdiction to hear claims of defamation and intentional interference with a business advantage against the university).

### Estoppel

■ Appellant's estoppel claims allege that the university, through Smith, made a promise of employment to appellant and that enforcement of that promise is required to prevent an injustice. To decide the estoppel claims, the district court must examine the university's alleged promise of employment and the details of that promise. Because determination of appellant's estoppel claims would require not just consideration of the university's internal hiring procedure and the details of an alleged offer of employment but also appellant's equitable rights to employment and the university's ultimate decision not to employ appellant, we conclude that the district court did not err in determining that it did not have jurisdiction over these claims under *Grundtner*, 730 N.W.2d at 332, and *Maye*, 615 N.W.2d at 386. A writ of certiorari from the court of appeals pursuant to Minn.Stat. § 606.01 is the only appropriate means for judicial review of appellant's estoppel claims.

### Negligent Misrepresentation

■ In contrast, appellant's negligent-misrepresentation claim is a common-law cause of action that is not premised on an equitable or legal claim to employment. The tort of negligent misrepresentation is defined as:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Hebrink v. Farm Bureau Life Ins. Co.*, 664 N.W.2d 414, 420 (Minn.App.2003) (quoting Restatement (Second) of Torts § 552(1) (1977)).

■ District court consideration of this negligence claim could be limited to a determination of whether the university, through Smith, provided appellant with false information that the appellant reasonably relied on by resigning as an assistant coach with OSU.[2] Unlike the estoppel claims, the district court would focus on the representation, appellant's reliance, and whether appellant incurred losses as a result of reliance on the alleged misrepresentation. These are considerations that do not intrude substantially on or challenge the university's internal decision-making process. Rather, the negligent-misrepresentation claim assumes that the university did not employ or discharge appellant. Because the actual hiring decision is not at issue and is not directly implicat-

---

**2.** The pleadings do not address whether there was an urgency in appellant's acceptance of the alleged negligent misrepresentation of an offer of employment. Although that question is not relevant to determination of judgment on the pleadings, the parties have represented, and the record contains claims, that a major part of appellant's responsibilities at Oklahoma State was, and prospectively at Minnesota would be, recruiting; that early April was the beginning of a critical phase in the recruiting season; and that immediate recruiting efforts by appellant were crucial to the position. Because these assertions are not relevant to judgment on the pleadings, we mention them only to provide context.

ed, we conclude the district court erred by dismissing appellant's negligent-misrepresentation claim on the pleadings and reverse and remand that claim to the district court.

## II.

■ The second issue is whether the district court erred in dismissing appellant's constitutional count for failure to state a claim for which relief can be granted. Minn. R. Civ. P. 12.02(e). Appellant's constitutional counts were brought pursuant to 42 U.S.C. § 1983 (2008), which authorizes civil actions against persons acting under the color of law of any state or territory for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." State courts have concurrent jurisdiction over section 1983 claims with federal courts. *Williams v. Ragnone,* 147 F.3d 700, 702 (8th Cir.1998). The district court found that it had jurisdiction to hear appellant's constitutional counts but dismissed the counts under Minn. R. Civ. P. 12.02(e) for failure to state a claim on which relief can be granted.

### Employment/Property Interest Claim

■ Two of appellant's section 1983 constitutional counts involve property-interest claims and assume that appellant had been hired by the university, was an employee, and was improperly dismissed. With respect to these counts, appellant challenges the district court's determination that, because he failed to utilize the university's grievance procedure, the counts must be dismissed for failure to state a claim for which relief can be granted.[3] The Eighth Circuit has held that, if a terminated employee has access to a post-

termination process and fails to resort to that process, the employee cannot maintain a claim based on an alleged due process violation. *Winskowski v. City of Stephen,* 442 F.3d 1107, 1111 (8th Cir.2006); *see also Schleck v. Ramsey County,* 939 F.2d 638, 643 (8th Cir.1991); *Riggins v. Bd. of Regents of Univ. of Neb.,* 790 F.2d 707, 712 (8th Cir.1986). "Allowing an employee to claim damages for being deprived of a hearing never requested would greatly expand government employers' potential liability and force such employers prophylactically to offer name-clearings when it is not at all clear that the employee is entitled to—or even desires—one." *Winskowski,* 442 F.3d at 1111.

Appellant argues that, while he did not specifically request a grievance hearing, he did request a meeting with Maturi and other university leadership. Although due process would require notice and an opportunity to be heard, appellant cites no authority to support a claim that he was entitled to a hearing or meeting with a specific employee of the university. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985) (stating that due process requires notice and an opportunity to respond). Accordingly, we conclude appellant's failure to utilize the university's grievance process precludes the two due process counts based on his claim of a property interest in his alleged employment.

### Lack of a Pretermination Hearing

■ For the first time on appeal, appellant argues his failure to utilize the university's grievance procedure is immaterial because he was entitled to a pretermination hearing. Because appellant's

---

**3.** Respondents conceded in the district court that, if appellant's claims in his complaint are presumed true, he would have had a property

interest that he could not be constitutionally deprived of without due process.

argument that he was denied a pretermination hearing was raised for the first time on appeal, we decline to address the argument under the rule articulated in *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988) (holding that this court will generally not consider matters not argued and considered by the court below).

### Liberty–Interest Claims

Appellant's other section 1983 constitutional counts claim that statements made by respondent Maturi infringed on appellant's constitutionality protected liberty-interests in his good name. Appellant challenges the district court's conclusion that these liberty-interest claims did not state a claim for which relief could be granted because appellant failed to dispute the truth of respondents' statements. "A liberty interest may be implicated when a governmental employer makes statements that may seriously damage the employee's good name." *Coleman v. Reed*, 147 F.3d 751, 754 (8th Cir.1998). However, injury to reputation by itself is not a "liberty" interest protected under the Fourteenth Amendment. *Siegert v. Gilley*, 500 U.S. 226, 233, 111 S.Ct. 1789, 1794, 114 L.Ed.2d 277 (1991). To state a claim under section 1983 for denial of due process based on the loss of a protected liberty interest, appellant must establish three things: (1) the statement stigmatized appellant; (2) the statement was made public; and (3) the statement is false. *Coleman*, 147 F.3d at 755.

Appellant's complaint states that Maturi "falsely den[ied] that Coach Smith hired [appellant as an assistant coach with the university men's basketball team] and suggest[ed that] it was due to alleged NCAA infractions that were purportedly three decades ago [at the university]." Appellant only argues that he denied at the time and still denies the substantial truth of the factual basis of the underlying NCAA charges. Appellant does not deny that the NCAA found that he violated certain NCAA rules. Because appellant does not deny that he was found to have committed NCAA violations, the district court did not err in determining that his liberty-interest counts failed to state a claim for which relief can be granted.

### Qualified Immunity

Appellant challenges the district court's determination that appellant's section 1983 liberty- and property-interest counts could not proceed against Maturi because he is entitled to qualified immunity. Qualified immunity protects "government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Qualified immunity may act as a bar to a section 1983 claim. *Johnson v. Morris*, 453 N.W.2d 31, 38–39 (Minn.1990). "[Q]ualified immunity questions should be resolved at the earliest possible stage to shield officers from disruptive effects of broad-ranging discovery and effects of litigation." *Elwood v. Rice County*, 423 N.W.2d 671, 675 (Minn.1988).

Appellant argues that the district court was premature in its determination that Maturi is entitled to qualified immunity in his individual capacity from the section 1983 counts. The university has a well-publicized employee-grievance procedure. This procedure reflects the university's effort to respect established constitutional rights of persons claiming to be university employees. Maturi, as a government official, receives the protections of qualified immunity when performing dis-

cretionary functions unless he could reasonably be expected to recognize that his conduct would violate clearly established statutory or constitutional rights. *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. We conclude that it would be reasonable for Maturi as a public official to believe that refusal to meet personally with appellant would not violate appellant's constitutional rights. Accordingly, we further conclude that the district court did not err in determining that Maturi has qualified immunity in regard to appellant's section 1983 counts against Maturi in his individual capacity.

## DECISION

We conclude that the district court correctly determined that judicial consideration of appellant's estoppel counts are limited to a certiorari appeal to the court of appeals and that appellant's constitutional counts failed to present a claim for which relief could be granted, but erred in determining that it did not have jurisdiction over appellant's negligent-misrepresentation claim. We, therefore, affirm in part, reverse in part, and remand.

**Affirmed in part, reversed in part, and remanded.**