**OVERSEAS COMMODITIES
CORPORATION, INC.,
Relator,**

v.

**Judy L. DOCKMAN, Respondent.**

No. C6–86–243.

Court of Appeals of Minnesota.

June 24, 1986.

Gerald T. Carroll, Jr., Carroll & Faulconer, Minneapolis, for relator.

Mark A. Masica, Minneapolis, for respondent.

Considered and decided by NIERENGARTEN, P.J., and LANSING and HUSPENI, JJ., with oral argument waived.

## OPINION

HUSPENI, Judge.

Relator Overseas Commodities Corporation appeals by writ of certiorari from an order of the Minneapolis Commission on

Civil Rights reversing a Minneapolis Department of Civil Rights determination that there was no probable cause to believe respondent Judy Dockman's charges of discrimination. The Commission's order also remanded the matter to the Department for further investigation. Because we conclude that the relator's request for review is premature, we discharge the writ.

## FACTS

Judy Dockman was discharged from her position with Overseas Commodities Corporation on September 30, 1983. On October 3, 1983, she filed a complaint with the Minneapolis Department of Civil Rights, alleging that her former employer had discriminated against her on the basis of sex and religion. Her complaint appeared to allege that she (a) was sexually harassed, (b) was not promoted, and (c) was discharged, all because of her sex and religion. Dockman is Jewish. Specifically, she claimed that she had suffered humiliation and harassment from Jim Keenan, the manager of the property division of Overseas Commodities, from the time he assumed that position in February 1983. She alleged that upon one occasion, Keenan stated to her that Jewish women were very bossy and were supposed to have large busts. He then asked Dockman why she did not have those traits. Dockman also claimed that Keenan had been hired even though he had no experience, and that she did most of Keenan's work, but received no pay raise.

Overseas Commodities claimed that Dockman was discharged because she left work early on September 29, 1983, and refused a direct order to make an investment. Dockman claimed that she had been told the investment could not be placed that day, and that she left early because she was not feeling well after being humiliated by the owner of Overseas Commodities.

The Minneapolis Department of Civil Rights conducted an investigation to determine whether there was probable cause to believe Dockman's allegations. The only evidence in the record [1] of this investigation is a document entitled "Summary of Investigation and Recommendation," in which the investigator determined that Dockman was not able to "prove" her case for the following summarized reasons:

1) Other employees, both male and female, were also humiliated, yelled at, and looked down upon by Dockman's boss;

2) Dockman's boss was simply a "bossy" type of person;

3) Dockman was insubordinate when she refused the owner's direct order to make an investment and left work early; and

4) Dockman did not complain that she was unfairly passed-over for a promotion until the six-month limitations period had expired.

The investigator concluded:

Last but not least, the issue of calling Jewish women big breasted and bossy may be both positive or negative. To some being bossy demotes (sic) superiority. For example, a servant can't boss his boss—it is the other way round. The master enjoys higher social status than his/her servant. To some women, being richly endowed is a compliment or an attainment. It is a requirement to be able to become a beauty queen (as opposed to those that do not have this gift), a movie actress, or perhaps an attractive woman. Being richly endowed is not a derogatory characteristic. Conversely those that do not possess this attribute are often times than not being subject to jokes and gossips.

Based upon the above conclusions, the investigator recommended that Dockman's complaint be dismissed for lack of probable cause.

Pursuant to this recommendation, and in accordance with section 141.50(c) of the Minneapolis Code of Ordinances (1984), on

---

1. Although Overseas Commodities has appended certain documents to its reply brief, they were not a part of the actual record.

September 14, 1984, the executive director of the Minneapolis Department of Civil Rights concluded that there was no probable cause to believe Dockman's allegations. Upon notification of the director's determination, Dockman filed an appeal with the Minneapolis Commission on Civil Rights, in accordance with the following procedures:

> The complainant may within fifteen (15) days after receiving such notice file an appeal in writing with the director, who shall promptly transmit said appeal to the chairperson of the commission. The chairperson shall designate three (3) members of the commission, at least one of whom shall be a lawyer, to review the director's determination. Upon request the complainant shall be able to make a presentation to the review committee. The review committee may then either affirm or reverse the director's decision or send the complaint back to the director for additional investigation.

Minneapolis, Minn., Code of Ordinances § 141.50(d) (1984).

A hearing was held on November 19, 1984, to review the director's determination of no probable cause. The Commission's order issued pursuant to that hearing reversed the director's determination and remanded for further investigation. (The order also denied a request by Dockman for a hearing to present additional evidence.) A memorandum attached to the order explained that the fact-finding conference held by the Department's investigator was inadequate, that further inquiry into the facts was necessary, and that the findings regarding Keenan's statement about Jewish women were clearly erroneous.

Relator Overseas Commodities appeals from this order.

## ISSUES

1. May this court review an order reversing the Department's no-probable-cause determination and remanding for additional investigation?

2. Did the review committee have the authority to remand this matter for additional investigation?

## ANALYSIS

### I.

■ Minn.R.Civ.App.P. 115.03 indicates that a party may petition for a writ of certiorari in order to obtain review of an order. However, certiorari will not ordinarily lie unless the order is a final determination of the parties' rights, rather than an interlocutory or intermediate order. *Youngstown Mines Corp. v. Prout*, 266 Minn. 450, 124 N.W.2d 328 (1963); *Settem v. Etter*, 236 Minn. 514, 53 N.W.2d 467 (1952).

■ In the present situation, Overseas Commodities seeks review of an order that reversed a no-probable-cause determination and remanded for further investigation. A review of the applicable ordinances reveals that this is not a "final" order appropriate for review.

Section 141.50 of the Minneapolis Code of Ordinances sets forth the procedures to be followed when a complaint is filed alleging discrimination. Those procedures may be summarized as follows:

1. A complaint is filed with the director;

2. The director makes a preliminary inquiry into the complaint;

3. The director determines whether there is probable cause to believe that the allegations of discrimination are well-founded;

4. If there is a finding of no probable cause by the director, the complainant has fifteen days to appeal to a three-member review committee. Upon request, the complainant may make a presentation to the review committee. The review committee may affirm, reverse or remand for additional investigation;

5. If the director (initially) or the review committee (on appeal) makes a determination that there is probable cause to believe the allegations, the director must immediately attempt to eliminate the discrimination. If the director can-

not do so, then the complaint is referred to the commission.

6. Following referral of a complaint, a public hearing is held before a three-member committee; this hearing must be conducted in accordance with chapter 14 of the Minnesota Statutes (contested case procedures).

7. If the hearing committee finds that discrimination has occurred, it issues its written findings, conclusions, and order. The order constitutes a final decision for purposes of appeal and enforcement.

Since there is no indication that a contested case hearing was held in this case, and since relator is appealing from an order of a no-probable-cause review committee, the writ is premature and must be discharged.

It should be noted that the Minneapolis ordinances provide:

> Any person aggrieved by a final decision of a hearing committee or a review committee in a contested case, reached after a hearing held pursuant to section 141.50, may seek judicial review in accordance with Chapter 14 of Minnesota Statutes.

Minneapolis, Minn., Code of Ordinances § 141.60(b) (1984). This language is somewhat ambiguous, since it appears to indicate that a review committee may issue a final decision following a contested case hearing. The ordinances themselves, however, do not allow for such a procedure, and in this case there has been no suggestion that a contested case review hearing occurred.

## II.

 Overseas Commodities' argument that the Commission lacked authority to remand this matter for additional investigation is specifically refuted by the Minneapolis ordinances. The ordinances provide:

> The review committee may then either affirm or reverse the director's [no probable cause] decision or *send the complaint back to the director for additional investigation.*

Minneapolis, Minn., Code of Ordinances § 141.50(d) (1984) (emphasis added). This language is clear, and relator's argument does not merit further discussion.

Because a contested case hearing has not yet been held, rendering this appeal premature, we do not address Overseas Commodities' claims that the Commission's decision is unsupported by substantial evidence and that Dockman failed to "prove" a prima facie case of discrimination.

## DECISION

Relator's appeal is premature. The Commission did not exceed its authority by remanding this matter for further investigation.

Writ of certiorari discharged.