MINNESOTA TEAMSTERS PUBLIC & LAW ENFORCEMENT EMPLOYEES' UNION, LOCAL # 320, Appellant,

v.

**COUNTY OF ST. LOUIS, Respondent.**

No. C4–99–1570.

Court of Appeals of Minnesota.

May 23, 2000.

Patrick J. Kelly, Stephen Kelly, Bannigan & Kelly, P.A., St. Paul, for appellant.

Alan L. Mitchell, St. Louis County Attorney, Vernon D. Swanum, Assistant County Attorney, Duluth, for respondent.

Considered and decided by RANDALL, Presiding Judge, AMUNDSON, Judge, and FOLEY,* Judge.

## OPINION

AMUNDSON, Judge

Appellant Minnesota Teamsters Public & Law Enforcement Employees' Union,

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

Local # 320 (the union) challenges the district court's denial of its motion to compel arbitration based on the court's determination that James Felty was not entitled to the grievance procedures under the collective bargaining agreement (CBA). The district court found that, as articulated in Article 7, § 1 of the CBA, Felty was not a "permanent" employee of the County of St. Louis (the county), the arbitrability of contract coverage was a matter for the court, and as a non-permanent employee Felty was outside the protection of the arbitration clause in question. We affirm.

## FACTS

The union is the exclusive representative of those St. Louis County Highway Department Maintenance employees who are public employees within the meaning of the Public Employment Labor Relations Act (PELRA), except for clerical, supervisory, and confidential employees. The relationship between the union and the county is governed by a collective bargaining agreement entered into on August 6, 1996.

Article 9, Part C of the CBA sets forth the agreed-upon grievance procedures and states in relevant part:

In the event an employee covered by the AGREEMENT claims that his rights or privileges under this AGREEMENT have been violated, the matter shall be resolved in accordance with the following procedure:

Step 1 [employee to submit grievance to foreman],

Step 2 [submission of grievance to department head],

Step 3 [appeal to the County Grievance Board],

Step 4: If the grievance is not settled in accordance with the foregoing procedure, the UNION may refer the grievance to arbitration within ten (10) working days after receipt of the County Grievance Board's decision. The County and the UNION shall attempt to agree upon an arbitrator within five (5) working days after receipt of notice of referral, and in the event the parties are unable to agree upon an arbitrator within said five (5) working days, either party may request the Bureau of Mediation services to submit a panel of five (5) arbitrators.

\* \* \* \*

If a grievance is not presented within the time limit set for the above, it shall be considered "waived." If a grievance is not appealed to the next step within a specified time limit or any agreed extension thereof, it shall be considered settled on the basis of the County's last answer.

Beginning in September 1996, James Felty was episodically employed by the St. Louis County Public Works Department. From January 21, 1997 to April 21, 1997, and from January 8 to April 11, 1998, Felty was employed as an unclassified common laborer, and from April 22 to August 22, 1997, he was employed as a provisional highway maintenance worker.

On October 9, 1997, the union petitioned the Bureau of Mediation Services (the bureau) for clarification of Felty's appropriate unit. On December 3, 1997, the county responded that Felty was covered by the parties' CBA. On March 23, 1998, the union again petitioned the bureau requesting that Felty be designated a "public employee" as described under PELRA. *See* Minn.Stat. § 179A.03, subd. 14 (1998 & Supp.1999) (defining "public employee").

On May 22, 1998, the county had five unclassified common laborer positions in the Public Works department open for employment, but declined to hire Felty.

On June 4, 1998, the bureau held a hearing on the union's petition. On June 30, 1998, it issued an order finding that because the parties agreed on Felty's status as a "public employee," and because such agreement was appropriate, Felty was included in the union's representation.

On July 20, 1998, the union and Felty filed a grievance regarding his employ-

ment with the county, alleging that the county violated Article 4, § 2 and Article 7, § 4 of the CBA when it declined to re-hire Felty.

Article 4, § 2 of the CBA states:

In accordance with applicable law, the EMPLOYER and the UNION agree to apply the provisions of the AGREE-MENT equally to all employees, without discrimination as to age, sex, marital status, religion, race, color, creed, national origin, political belief or employee organization affiliation.

Article 7, § 4 of the CBA states:

In the event of a reduction in force, the EMPLOYER shall designate the classification(s) and work reporting station(s) in which the reduction will be initiated. * * *

\* \* \* \*

If an employee chooses not to exercise bumping rights or cannot bump any other employee, the employee shall be placed on the Civil Service re-employment list.

On October 14, 1998, the county denied the grievance in Step 2, declaring it to be outside the scope of the CBA. On October 20, 1998, the union appealed the grievance under Step 3 of the grievance procedure. On December 8, 1998, the County Grievance Board denied the grievance. The same day that the County Grievance Board denied the grievance, the union wrote to the bureau requesting a list of arbitrators with regard to Felty's grievance—noting that the county's representative was Mr. Steven C. Fecker. On December 10, 1998, the bureau forwarded a list of arbitrators to the union and to Fecker. On April 1, 1999, the county was asked to strike names of arbitrators. On April 2, 1999, the county refused. In its letter of refusal, the county first stated that the request was untimely because Fecker was not the appropriate recipient, and its timeliness inappropriate because Felty was not a "permanent" employee

and therefore was not covered by the CBA's arbitration clause.

The union filed a motion to compel arbitration, arguing that any issue of arbitrability was for an arbitrator to decide. The county argued that Felty and the union were not entitled to arbitrate this matter, as Felty was not covered by the CBA. On July 20, 1999, the district court denied the union's motion, finding that Felty was not within the group of employees entitled to the CBA's grievance procedures or arbitration. Furthermore, the district court held that the preliminary determination of arbitrability is for the court, rather than for the arbitrator. Finding the CBA's applicability to Felty to be dispositive, the district court never reached the issue of the timeliness of the union's actions. This appeal followed.

## ISSUE

When considering a motion to compel arbitration pursuant to Minn.Stat. § 572.09, may the district court determine the arbitrability of a claimant's coverage under an established arbitration agreement?

## ANALYSIS

■ We review district court decisions concerning the arbitrability of disputes de novo. *Amdahl v. Green Giant Co.*, 497 N.W.2d 319, 322 (Minn.App.1993). In considering a motion to compel arbitration, the court asks "(1) whether a valid arbitration agreement exists, and (2) whether the dispute falls within the scope of the arbitration agreement." *Id.*

■ Minnesota law clearly favors arbitration of disputes. *Ehlert v. Western Nat'l Mut. Ins. Co.*, 296 Minn. 195, 199, 207 N.W.2d 334, 336 (Minn.1973); *see also Brothers Jurewicz, Inc. v. Atari, Inc.*, 296 N.W.2d 422, 427 (Minn.1980) (arbitration accorded "preferred status"). Doubts concerning the scope of arbitrable issues are resolved in favor of arbitration. *Johnson v. Piper Jaffray, Inc.*, 530 N.W.2d 790, 795

(Minn.1995). But, arbitration of a dispute will not be compelled in the absence of any evidence that the parties intended to submit that dispute to arbitration. *See Michael–Curry Cos. v. Knutson Shareholders Liquidating Trust,* 449 N.W.2d at 139, 141 (Minn.1989) (compelling arbitration of claim only where arbitration clause specifically includes, or is broad enough to comprehend, arbitration of that claim).

## I.

■ The union contends that the district court's authority is limited to determining the bare existence of an arbitration agreement. Minn.Stat. § 572.09 governs motions to compel arbitration and states in pertinent part:

> On application of a party showing an [arbitration] agreement * * *, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party, otherwise, the application shall be denied.

Minn.Stat. § 572.09(a) (1998). Because the parties do not dispute the existence of an arbitration agreement, the union asserts that it was improper for the district court to decide whether Felty fell within its scope. Indeed, if the scope of the arbitration clause is at least reasonably debatable, "the issue of arbitrability is to be initially determined by the arbitrators." *Atcas v. Credit Clearing Corp. of Am.,* 292 Minn. 334, 341, 197 N.W.2d 448, 452 (1972). But even if the bare existence of an agreement to arbitrate clearly exists, the district court may still decide whether the particular dispute at issue was clearly outside the scope of the clause. *See id.* ("if no agreement to arbitrate exists * * * because the controversy sought to be arbitrated is not within the scope of the arbitration clause of the contract, the court may interfere and protect a party from being compelled

to arbitrate"). Thus, we conclude that the statute governing motions to compel arbitration presumes that the district court will also determine whether the scope of the arbitration agreement is reasonably debatable as part and parcel of the required determination of the existence of an arbitration agreement.

■ That scope determination requires the court to divine whether the parties intended to arbitrate the particular controversy in question, *Minnesota Fed'n of Teachers Local 331 v. Independent Sch. Dist. No. 361,* 310 N.W.2d 482, 484 (Minn. 1981), gleaning that intent from the language of the parties' agreement itself. *Michael–Curry,* 449 N.W.2d at 141.

Here, the county never claimed the disputed *issue* (re-employment) is outside the scope of the CBA; rather, it contended that the *claimant* was not covered by the CBA. This court has not yet addressed whether, in making an initial determination as to the scope of an arbitration agreement, it is appropriate for a district court to determine the perimeters of an arbitration clause's coverage in a labor contract. But the Minnesota Supreme Court has addressed a similar arbitrability issue—whether contested factual preconditions of insurance policy coverage (and therefore, of an arbitration clause) need to be established first by the court. *United States Fidelity & Guar. Co. v. Fruchtman,* 263 N.W.2d 66, 71 (Minn.1978). The court in *Fruchtman* said

> [w]here coverage is preconditioned on the establishment of facts, * * * such factual disputes must be tried and resolved by the trial court accompanied by findings of fact. If such factual preconditions are not established, coverage is not afforded by the policy, and the objecting party must be protected from the burden of unauthorized arbitration of both the coverage dispute and the merits of the insured's claim.

*Id.* (citation omitted). Similarly, the court in *Rosenberger v. American Family Mut. Ins. Co.,* 309 N.W.2d 305 (Minn.1981), ap-

proved the district court's grant of de novo review of the issue of a party's residency as a factual precondition to insurance coverage.

We find the situation presented here to be analogous. In the present case, there is no question of coverage under an insurance policy arbitration clause, but rather the similar issue of whether a claimant is covered under another type of contractual agreement—the parties' CBA grievance procedure. There appears no good reason why courts should apply one set of rules for employment contracts and another set for insurance contracts.

The union notes that in both *Fruchtman* and *Rosenberger*, the arbitrability issues were originally decided in arbitration and subsequently appealed to the district court. Thus the union contends that the correct model is to "arbitrate first, then appeal." This distinction is irrelevant. "[A]n objecting party must be protected from the burden of unauthorized arbitration of both *the coverage dispute* and the merits." *Fruchtman*, 263 N.W.2d at 71 (emphasis added). In some situations, the coverage issue need not initially go to arbitration. *See Myers v. State Farm Mut. Auto. Ins. Co.*, 336 N.W.2d 288, 290–91 (Minn.1983) (explaining *Fruchtman*). If it is not "reasonably debatable" whether the coverage dispute is within the scope of the arbitration clause, to force a party to "arbitrate first" would directly contradict the rule that parties must be protected from unauthorized arbitration.

## II.

Thus, in addition to our conclusion that the district court had jurisdiction to initially decide the issue of arbitrability, we conclude that the district court was correct in denying Felty's motion to compel arbitration because Felty is not covered by the CBA. Under *Atcas*, it must be at least "reasonably debatable" whether an arbitration clause includes a particular dispute, for a court to compel arbitration of that dispute. *Atcas*, 292 Minn. at 341, 197 N.W.2d at 452.

Whether Felty is covered by the arbitration agreement depends on his employment classification under the CBA and the St. Louis County Civil Service law (SLCCSL), which was incorporated into the CBA. Rule 7.4(b) of the SLCCSL expressly denies civil service status and, therefore, arbitration rights to temporary employees. Article 7, § 1 of the CBA indicates that employees discharged during the six-month probationary period "shall not have rights under the grievance procedure." Therefore, Felty only holds grievance rights if he is a permanent, nonprobationary employee.

Felty's employment with the county consisted of three periods of seasonal employment, none of which exceeded four months. Under the SLCCSL, the "period of temporary service [shall not] be counted as part of the probationary period, in case of a subsequent appointment to a permanent position." Nothing in his employment history indicates Felty was appointed to a permanent position other than possibly the bureau's determination that Felty was a "public employee"—a status entirely different from that of "permanent employee"—does not constitute an appointment to any permanent position. Individuals appointed to a permanent *position* in the civil service acquire the status of "public employee," pay union dues immediately, and receive union representation. However, such employees do not achieve permanent *status* until they have successfully served a six-month probationary period. Since being designated a "public employee," Felty has not worked for the county in any capacity. Furthermore, the time Felty spent working for the county before the "public employee" designation does not count as probationary time because bureau rules provide that the effective date of a bureau order is the day following the order. Accordingly, Felty has never worked through the probationary period required

for the applicability of the grievance procedure.

The plain language of the CBA indicates that Felty does not have arbitration rights. The union's argument that Felty is covered by the clause either misapplies the significance of the bureau's determination that he is a "public employee," or expands his rights as a temporary employee beyond those of a probationary "permanent employee" and contravenes the SLCCSL rule that temporary employees do not have civil service status.

### DECISION

The district court did not err in denying appellant's motion to compel arbitration.

**Affirmed.**