**Daniel John LUETH, Respondent,**

v.

**CITY OF GLENCOE, Appellant.**

**No. C1–01–913.**

Court of Appeals of Minnesota.

Feb. 6, 2002.

Review Denied April 16, 2002.

James M. Ventura, Keith E. Ekstrom, Wayzata, MN, for respondent.

Julie Fleming Wolfe, St. Paul, MN, for appellant.

Considered and decided by WILLIS, Presiding Judge, CRIPPEN, Judge, and FOLEY, Judge.*

## OPINION

WILLIS, Judge.

Appellant City of Glencoe (the city) challenges the district court's denial of its motion to dismiss for lack of subject-matter jurisdiction over respondent Daniel John Lueth's motion to compel arbitration, which he brought after the city terminated his employment. We conclude that the district court had subject-matter jurisdiction to decide whether there existed an agreement between the parties to submit to arbitration, and we affirm the denial of the city's motion. But we conclude that the district court exceeded its subject-matter jurisdiction when it decided that the city is required to submit to arbitration as a matter of law, and we vacate the district court's order requiring arbitration.

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

## FACTS

The city terminated Lueth's employment as a police officer. As required by a collective-bargaining agreement (CBA) between the city and Lueth's union, the city's termination decision was submitted to arbitration. On February 5, 2000, an arbitrator ordered Lueth reinstated with back pay. The CBA was annulled two months later when the city's police officers voted to decertify the union.

Before returning to active duty, Lueth was required to pass a firearm-proficiency examination. On July 10, 2000, the city terminated Lueth on the ground that he failed to pass the examination.

Lueth filed a grievance under the city's personnel policy, alleging that the city failed to follow required procedures in the proficiency examination. The city administrator responded that Lueth's termination was not grievable because the grievance procedures in the personnel policy applied to disciplinary actions, and the termination resulting from his failure to pass the examination was not a disciplinary action.

Lueth moved the district court to compel arbitration, contending that (1) the personnel policy is an employment contract and (2) the final grievance procedure in the personnel policy is an arbitration agreement or, alternatively, that an arbitration agreement must be implied as a matter of law. See Minn.Stat. § 572.09 (2000) (providing procedure to compel arbitration). The city opposed the motion, claiming that that the personnel policy is not a contract and that an arbitration agreement did not exist. The city also moved to dismiss Lueth's motion for lack of subject-matter jurisdiction, arguing

Minn. Const. art. VI, § 10.

that, because Lueth was an at-will employee, his exclusive means of judicial review of the city's termination decision is by writ of certiorari to this court.

The district court denied the city's motion and granted Lueth's motion. The district court ruled that it had limited subject-matter jurisdiction to determine whether an arbitration agreement exists and whether it is reasonably arguable that the dispute over Lueth's termination fit within the agreement. *See Minn. Teamsters Pub. & Law Enforcement Employees' Union, Local No. 320 v. County of St. Louis*, 611 N.W.2d 355, 359 (Minn.App. 2000) (stating that when scope of arbitration clause is at least reasonably debatable, issue of arbitrability is to be initially determined by arbitrator). The district court found that the grievance procedure in the personnel policy is not an arbitration agreement but concluded that the city was required by the Public Employment Labor Relations Act (PELRA), Minn.Stat. §§ 179A.01–.25 (2000), to provide arbitration as part of its grievance procedures. *See* Minn.Stat. § 179A.20 (providing contract requirements). The district court implied an arbitration provision to "vindicate Lueth's right to arbitration."

The city appeals from the district court's order denying its motion to dismiss for lack of subject-matter jurisdiction.

## ISSUES

1. Did the district court have subject-matter jurisdiction to decide whether the city's personnel policy has a provision requiring arbitration?

2. Did the district court have subject-matter jurisdiction to decide whether PELRA requires the city to submit to arbitration?

## ANALYSIS

An appeal may be taken from an order denying a motion to dismiss for lack of subject-matter jurisdiction. *Engvall v. Soo Line R.R. Co.*, 605 N.W.2d 738, 743–44 (Minn.2000). The existence of subject-matter jurisdiction is a question of law, which this court reviews de novo. *Burkstrand v. Burkstrand*, 632 N.W.2d 206, 209 (Minn.2001).

## I.

The city argues that Lueth, through his motion to compel arbitration, essentially seeks judicial review of its termination decision and the process by which it was reached. Citing *Willis v. County of Sherburne*, 555 N.W.2d 277 (Minn.1996), and *Dietz v. Dodge County*, 487 N.W.2d 237 (Minn.1992), the city asserts that Lueth's only means of review is by writ of certiorari to this court.

In *Dietz*, a nursing-home administrator sued her employer, Dodge County, for wrongful discharge. 487 N.W.2d at 237. The supreme court held that in the absence of "adequate method of review or legal remedy," a writ of certiorari was the only method by which the administrator could obtain judicial review of the county's decision to terminate her employment. *Id.* at 239. The court provided four reasons for its holding: (1) no statute provided for appeal to the courts from an administrative decision to terminate a county nursing-home administrator; (2) the wrongful-discharge action "would require the rights and liabilities of the parties to be fixed not by the terms of a contract, but by the propriety of the county's exercise of discretion in [its] termination decision"; (3) whether the administrator entered into an "at-will" or a "for-cause" employment contract was a question of law appropriate for certiorari review; and (4) a writ of certiorari must issue within 60 days after notice

of the termination decision and thus ensures "expedient review of a fresh record." *Id.* at 239–40.

■ In *Willis,* an employee sued his employer, Sherburne County, for breach of contract on the ground that he was terminated without just cause. 555 N.W.2d at 279. The district court granted summary judgment to the county but allowed the employee to amend his claim to what he characterized as a "pure breach of contract claim." *Id.* The supreme court concluded:

Regardless that the claim is cloaked in the mantle of breach of contract, when the alleged breach of the employment contract of a governmental employee results in termination of the claimant's employment by an executive body which does not have statewide jurisdiction—for example, a county—the claimant may contest the employer's action by certiorari alone, absent statutory authority for a different process. * * *

[The employee] would have us believe that his breach of employment contract [claim] does not implicate the county's decision to discharge him. Just how a discharged employee can demonstrate the county's breach of termination and layoff procedures *without* implicating the county's decision to discharge escapes us.

*Id.* at 282. *Willis* makes clear that the manner in which a cause of action is characterized does not change the analysis of whether the district court has subject-matter jurisdiction. In the absence of a statute providing for a different process, the dispositive question is whether the claim implicates an executive body's decision to terminate an employee. *Id.*

But, unlike the employees in *Willis* and *Dietz,* Lueth did not bring a cause of action against his employer. Rather, he filed a motion to compel arbitration under the Uniform Arbitration Act (UAA), Minn.

Stat. §§ 572.08–.30 (2000). The act states, in part:

A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable, and irrevocable, save upon such grounds as exist at law in equity for the revocation of any contract. * * * [The act applies] to arbitration agreements between employers and employees * * * unless otherwise provided in the agreement.

On application of a party showing an agreement * * * and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party, otherwise, the application shall be denied.

Minn.Stat. §§ 572.08–.09(a). Although we find no published Minnesota case that addresses whether *Willis* and *Dietz* divest the district court of subject-matter jurisdiction over a public employee's motion to compel arbitration when no cause of action has been brought against the employer, we conclude that they do not.

■ When a party brings a motion to compel arbitration, the district court asks (1) whether a valid arbitration agreement exists and (2) whether the dispute is within the scope of the arbitration agreement. *Minn. Teamsters,* 611 N.W.2d at 358. The district court may not examine the merits of the dispute when considering the motion. *Local No. 1119, Am. Fed'n State, County, and Mun. Employees v. Mesabi Reg'l Med. Ctr.,* 463 N.W.2d 290, 296–97 (Minn.App.1990). Thus, when there is a

dispute between a public employee and the employer, the district court's consideration of a motion to compel arbitration does not involve judicial review of any termination decision by the employer. There is, therefore, no conflict between *Willis* and *Dietz* and the district court's consideration of the motion.

We note, however, that the UAA permits the district court to review an arbitration award. On application of a party, the district court will confirm an arbitration award unless "grounds are urged for vacating or modifying or correcting the award." Minn.Stat. § 572.18. The UAA, therefore, permits the district court to review the arbitration award, which is a resolution of the dispute between the employee and the employer.

But the district court's review of an arbitration award is limited and does not involve the direct judicial review of an administrative body's decision contemplated by *Willis* and *Dietz*. *See* Minn.Stat. §§ 572.19–.20 (providing limited permissible grounds of vacation, modification, and correction of award). Further, just as the supreme court was concerned about "the maintenance of fundamental separation of powers principles" in *Dietz*, we are concerned about infringing on the right of a public employer to enter into arbitration agreements with its employees as it sees fit. *Dietz*, 487 N.W.2d at 239. The public employer may well decide to enter into an arbitration agreement with full knowledge of and reliance on the UAA's procedures for bringing a motion to compel if an employee refuses to arbitrate. If we were to hold that the district court lacks subject-matter jurisdiction to decide whether an arbitration agreement exists, we would, in essence, deprive any public employer of the right to seek enforcement of an arbitration agreement by bringing a motion to compel. And we cannot attempt to re-move the district court from the arbitration-review process provided by the UAA. There is no provision in the act that permits a public employer to bypass the district court and seek initial review of an arbitration award in this court by writ of certiorari, and it is not our function to create such a bypass. *See Lake George Park, L.L.C. v. IBM Mid–Am. Employees Fed. Credit Union*, 576 N.W.2d 463, 466 (Minn.App.1998) ("This court, as an error correcting court, is without authority to change the law."), *review denied* (Minn. June 17, 1998). We leave that task, if it is warranted, to the legislature or the supreme court.

We conclude that the district court did not err by denying the city's motion to dismiss for lack of subject-matter jurisdiction.

## II.

The city also argues that PELRA applies only to employment contracts and that the personnel policy was not an employment contract. As a result, the city contends, PELRA does not provide Lueth with "statutory authority" for relief, and therefore his only means of seeking review of the city's termination decision is by writ of certiorari. *See Willis*, 555 N.W.2d at 282 (holding that exclusive means of review of public employer's termination decision is by writ of certiorari "absent statutory authority for a different process").

We do not reach the city's PELRA argument because we conclude that the district court exceeded the limited subject-matter jurisdiction conferred by the UAA. In a judicial proceeding to compel arbitration, the issue presented is the existence and scope of the arbitration agreement. *United States Fidelity & Guar. Co. v. Fruchtman*, 263 N.W.2d 66, 71 (Minn. 1978). The UAA limits the district court's inquiry to a "written agreement" or a

"provision in a written contract." Minn. Stat. § 572.08. Here, the district court did not address whether the city's personnel policy is an employment contract but, evidently assuming that even if it were a contract, did find that there did not exist any arbitration-agreement provision in the policy's grievance procedures. The court did not find an arbitration agreement elsewhere in the policy. At that point, the inquiry should have ended.

But the district court accepted Lueth's argument that PELRA required the city to provide a grievance procedure for compulsory binding arbitration, and, in doing so, the district court looked beyond a "written agreement" or a "provision in a written contract." We note that, in any event, the PELRA provision on which the district court relied, Minn.Stat. § 179A.20 (2000), requires that a grievance procedure providing for compulsory binding arbitration must be included in all collective-bargaining contracts. *See* Minn.Stat. §§ 179A.03, subds. 6 (defining "[e]mployee organization" as "any union or organization of public employees"), 8 (defining "[e]xclusive representative" as "an employee organization which has been certified * * * to meet and negotiate with the employer"), .20, subds. 1 (stating that "[t]he exclusive representative and the employer shall execute a written contract or memorandum of contract"), 4(a) (stating that "[a]ll contracts must include a grievance procedure providing for compulsory binding arbitration"). But the CBA between the city and its police officers had been annulled by the time Lueth was terminated on the ground that he failed the firearm-proficiency examination. Further, even if section 179A.20 required a procedure for compulsory binding arbitration to be included not only in a CBA but also in any employment contract between a public employer and an employee, the district court did not make the necessary determination that the city's personnel policy is an employment contract.

We conclude that the district court exceeded its limited subject-matter jurisdiction and therefore vacate its order requiring the city and Lueth to submit the termination dispute to arbitration.

### DECISION

The district court properly denied the city's motion to dismiss for lack of subject-matter jurisdiction but exceeded that jurisdiction by implying an arbitration agreement as a matter of law.

**Affirmed in part and vacated in part.**