The **UNIVERSITY OF MINNESOTA,**
**Respondent,**

v.

**Robert J. WOOLLEY, M.D., Relator.**

No. C6–02–1534.

Court of Appeals of Minnesota.

April 22, 2003.

Mark B. Rotenberg, General Counsel, Tracy M. Smith, Associate General Counsel, University of Minnesota, Minneapolis, MN, for respondent.

Susan M. Robiner, Leonard, Street and Deinard, P.A., Minneapolis, MN, for relator.

Considered and decided by SHUMAKER, Presiding Judge, WRIGHT, Judge, and HUSPENI, Judge.

## OPINION

HUSPENI, Judge.*

By writ of certiorari, relator seeks review of an arbitration decision affirming the termination of his employment pursuant to the University of Minnesotas grievance procedure. We discharge the writ of certiorari on the ground that although relator could have obtained certiorari review of the Phase III administrative decision, judicial review of a Phase IV arbitration decision is available only from the district court pursuant to the Uniform Arbitration Act, Minn.Stat. §§ 572.08–.30 (2000).

## FACTS

Relator Robert J. Woolley, M.D., was employed as a physician at Boynton Health Service, a unit of respondent University of Minnesota (university). On September 28, 2001, the director of Boynton Health Service terminated relators employment for just cause on the ground that relator sexually harassed one of the health service employees, violating the university's sexual harassment policy.

Relator challenged his termination by filing a grievance under the University of Minnesota Grievance Policy. Under "Phase I" of this policy, a grievance officer arranges an informal meeting between the grievant and the administrator responsible for the challenged decision. This meeting did not resolve the issue, so the proceeding then moved to "Phase II," in which the grievance officer sets a meeting between relator and the supervisor of the administrator imposing discipline. The Phase II

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

meeting also failed to resolve the issue. Relator then sought further review through a "Phase III" hearing before a three-person panel. After the hearing, the Phase III panel sustained the termination.

After signing a written agreement to arbitrate, relator then entered into a "Phase IV" arbitration proceeding. A neutral arbitrator issued an award denying relator's grievance on July 15, 2002, and the other two members of the panel concurred with the arbitrator's award on July 16, 2002.

Relator challenges the merits of the arbitrator's decision through certiorari. The university, in its statement of the case, challenged this court's jurisdiction to review the arbitration award. This court then issued an order questioning jurisdiction, requesting memoranda from both parties. We then issued a preliminary ruling that the university had not established that this court lacked certiorari jurisdiction, but deferred a final ruling until the appeal was decided on the merits, in view of the limited record before the court. The parties were ordered to address the jurisdictional issue further in their briefs.

## ISSUE

Does the court of appeals have subject-matter jurisdiction to consider a certiorari challenge to an arbitration decision upholding relator's discharge from his employment at the university pursuant to the university's grievance procedure?

## ANALYSIS

■■■■ Whether the court of appeals has subject-matter jurisdiction over a certiorari appeal is a question of law reviewed de novo. *Shaw v. Bd. of Regents of Univ. of Minn.*, 594 N.W.2d 187, 190 (Minn.App. 1999), *review denied* (Minn. July 28, 1999).

[I]n the absence of an adequate method of review or legal remedy, judicial review of the quasi-judicial decisions of administrative bodies, if available, must be invoked by writ of certiorari.

*Dietz v. Dodge County*, 487 N.W.2d 237, 239 (Minn.1992). Because no statute specifically permits an appeal from an administrative decision to terminate the employment of a university employee, "certiorari pursuant to Minn.Stat. § 606.01 (1998) is the only method available for review of a university decision." *Shaw*, 594 N.W.2d at 191 (citing *Dietz*, 487 N.W.2d at 239).

■■■ At issue here is whether the Phase III decision or the Phase IV decision is the quasi-judicial decision subject to certiorari review. There are three indicia of quasi-judicial actions:

(1) investigation into a disputed claim and weighing of evidentiary facts; (2) application of those facts to a prescribed standard; and (3) a binding decision regarding the disputed claim.

*Minn. Ctr. for Envtl. Advocacy v. Metro. Council*, 587 N.W.2d 838, 842 (Minn.1999) (*MCEA*). Failure to meet any of the three indicia is "fatal" to a claim that the proceedings were quasi-judicial. *Id.* at 844.

We note initially that there is a considerable lack of clarity in the university's grievance policy—a lack that adds an additional challenge to those already presented by the jurisdictional questions raised in this case. Nonetheless, we begin our attempt to answer those questions by examining the Phase III decision. Under the university's grievance policy, "[t]he purpose of Phase III is to provide an internal evidentiary hearing by a three person panel." After the hearing, the panel is to "prepare a decision consisting of a statement of the issues, contentions of the parties, findings of fact, opinion and award, if any." Thus, the first two indicia of a quasi-judicial action are met.

■ The more complicated question is whether the Phase III decision is a final one. The scope of certiorari review and a determination of whether a decision is a quasi-judicial one are legal questions that should be decided by this court. *Shaw*, 594 N.W.2d at 190. Quasi-judicial decisions determine the rights of the contending parties and are binding upon them. *Meath v. Harmful Substance Compensation Bd.*, 550 N.W.2d 275, 280 (Minn.1996). "[C]ertiorari will not ordinarily lie unless there is a final determination of rights." *State ex rel. Mosloski v. County of Martin*, 248 Minn. 503, 506, 80 N.W.2d 637, 639 (1957).

■ In determining whether a decision is a final one appropriate for certiorari review, courts will examine the relevant statutes or rules or assess whether the parties treated the matter as final. *Mowry v. Young*, 565 N.W.2d 717, 720 (Minn. App.1997), *review denied* (Minn. Sept. 18, 1997). If the challenged order is interlocutory or intermediate, it is not a final order subject to certiorari review. *Overseas Commodities Corp. v. Dockman*, 389 N.W.2d 254, 256 (Minn.App.1986).

We also examine caselaw for assistance in resolving this issue. In *Overseas Commodities*, this court held that under the governing ordinances, a decision by a civil rights department reversing and remanding a determination of no probable cause was not a final order appropriate for certiorari review. 389 N.W.2d at 256. In *Mosloski*, the supreme court held that an order issued following a preliminary hearing in a ditch proceeding was not a final determination subject to judicial review, where the statute provided for a final hearing at which the location of the ditch could be determined. 248 Minn. at 508, 80 N.W.2d at 640. In contrast, in *Mowry*, the termination decision was deemed final where employee was notified it was final

and the record did not indicate that the parties treated it as other than final; the fact that the termination may not have been valid because it had not been approved by the requisite committee did not preclude its finality but rather was an issue to be addressed upon certiorari review. 565 N.W.2d at 720.

Consistent with the rationale of *Mowry*, we focus initially on whether the university treats a Phase III decision as final. We cannot ignore, however, that "[w]e review de novo the issue of jurisdiction without deference to the lower" body. *MCEA*, 587 N.W.2d at 842 (citation omitted).

We therefore examine the language of the grievance policy to determine whether the Phase III decision is a final, appealable one. The policy provides as to Phase III:

If the Phase III panel decision is favorable to the grievant, the University will implement it, unless the Senior Vice President for Academic Affairs delivers a written notice to the UGO and the grievant within ten (10) work days of the receipt of the Phase III panel's decision stating that the decision is not acceptable and the reasons why it is not acceptable. In this event, the grievant may request Phase IV arbitration.

If the decision of the Phase III panel is not favorable to the grievant, the grievant may choose to proceed to Phase IV arbitration. If the Phase III decision is not acceptable to the University, or if it is not favorable to the grievant, the grievant must deliver a written notice of intent to proceed to Phase IV to the UGO and the Phase III University representative within ten (10) work days after the grievant received the Phase III hearing panel decision or the Senior Vice President's notice, whichever occurred last, unless there are compelling reasons for delay.

If the grievant chooses to proceed to arbitration, the grievant shall sign an acknowledgement of his/her voluntary choice to proceed to binding arbitration to resolve the grievance and/or discovery dispute, and shall waive and release all rights to pursue substantially the same claim in any other forum.

Thus, under the language of the grievance policy, when a Phase III decision is favorable to the university, that decision is the final decision of the university. When a Phase III decision is unfavorable to the university, that decision, we suppose, might be accepted by the university nonetheless, the grievant ordinarily then would be satisfied, and, if so, no more would be heard of the matter. But a far more likely action in the case of a Phase III decision unfavorable to the university would be the one allowed by the grievance policy: the university's vice-president for academic affairs would issue notice rejecting the decision, which then becomes the final decision of the university. The inevitable conclusion, it seems to us, is that a Phase III procedure would always be final from the viewpoint of the university, either because the panel decision was favorable to the university initially or because the senior vice president rejected the panel's decision and indicated why.

What if the Phase III decision is unfavorable to the grievant? Is that decision final as to him or her? It is in seeking to answer this question that the lack of clarity in the grievance policy becomes most evident and troublesome. Despite the linguistic thicket through which a grievant must struggle, however, he or she must be held to understand that a voluntary choice is being made to proceed further. The grievant may request Phase IV arbitration, and upon doing so must provide timely written notice to certain individuals and entities. The grievance policy does not, however, contain language specifically informing a grievant that by electing to proceed to Phase IV he or she will be abandoning the right to seek review by certiorari of a Phase III decision. This court must answer the question of whether a Phase III decision is "final" in the sense that it is a "binding decision regarding the disputed claim" under *MCEA,* or merely one more step that must be completed to exhaust all administrative remedies.

■ We recognize that a university employee challenging an adverse employment decision by the university "must exhaust the grievance process applicable to [the] position" before seeking review by writ of certiorari. *Stephens v. Bd. of Regents of Univ. of Minn.,* 614 N.W.2d 764, 774 (Minn.App.2000), *review denied* (Minn. Sept. 26, 2000). In *Stephens,* however, the relator withdrew her grievance and failed to proceed through any of the Phases of the university's grievance process. *Id.* at 776. This court explicitly recognized but did not reach the issue of whether a party would be precluded from seeking judicial review before exhausting Phase IV arbitration in which a grievant agrees to binding arbitration. *Id.* at 776 n. 8.

We must answer here the question left unanswered in *Stephens.* In seeking that answer we review not only the language of Phase III, but that of Phase IV and the purpose section also. Complicating our search for an answer to this is the fact that there are several references throughout the policy to Phase IV as being the "final and binding" decision.

The purpose section provides:

An employee who chooses to proceed to Phase IV arbitration shall be required to sign a waiver which, at that point, shall create contractual obligations between the University and the employee. The Phase IV arbitration award is the only

feature of this policy which is legally *final and binding* on both the University and the employee.

(Emphasis added.) Addressing Phase III procedures, the grievance policy states:

The purpose of Phase III is to provide an internal evidentiary hearing * * *. * * * If the Phase III decision is * * * not favorable to the grievant, the grievant must deliver a written notice of intent to proceed to Phase IV to [the university]. * * * If the grievant chooses to proceed to arbitration, the grievant shall sign an acknowledgement of his/her voluntary choice to proceed to *binding arbitration* to resolve the grievance * * * and shall waive and release all rights to pursue substantially the same claim in any other forum.

(Emphasis added.) Addressing Phase IV—Arbitration, the policy states:

The purpose of Phase IV is to provide an opportunity for the parties to voluntarily engage in *final and binding* arbitration * * * of the grievance. * * * The decision is legally binding.

(Emphasis added.) While this language refers to the final and binding arbitration decision, we conclude that this language does not preclude a determination that a Phase III decision is a quasi-judicial decision subject to certiorari review. Instead, it underscores the final and binding nature of an arbitration decision.

It may be argued that discussion of Phase III in the grievance policy could have or should have included some language indicating that the internal, administrative procedures of the university were concluded when a Phase III decision (either by the panel or by the vice-president of academic affairs) was made, and review of a final administration decision was possible at that point. But our construction of what language *is* in the policy causes us to conclude that grievant was sufficiently put on notice that at the conclusion of Phase III his involvement with an internal process was at an end, and that review of a final administrative proceeding was available to him. He must be held to have known from policy language that if he chose to proceed to Phase IV he would be entering into a process which would result in an arbitration panel decision binding upon both parties (substantially different from the Phase III panel decision which could be overturned by the vice-president for academic affairs); that in proceeding to Phase IV he was required to take actions not required of him as he moved through earlier Phases of the grievance procedure; that while he was free to choose to proceed to Phase IV, he would also be choosing to waive any opportunity he had for review of the Phase III decision in favor of submitting to the Phase IV procedure and any review available to him at the conclusion of that procedure.

We conclude that a party not only *may* seek judicial review through certiorari before exhausting Phase IV arbitration, but *must* seek such review after Phase III if that review is to be through a writ of certiorari. In reaching this decision, we, of necessity, conclude that Phase III is a final administrative decision.

▬ Finally, our conclusion that review by writ of certiorari was available to relator upon the conclusion of Phase III is consistent with the substantial body of caselaw which requires that review of quasi-judicial decisions of administrative bodies, if available, must be invoked by writ of certiorari. *See Dietz v. Dodge County,* 487 N.W.2d 237, 239 (Minn.1992); *Shaw,* 594 N.W.2d at 191. We note again that courts, not parties, must answer questions of subject-matter jurisdiction, and that courts cannot confer subject-matter jurisdiction where none exists. *Hemmesch v. Molitor,*

328 N.W.2d 445, 447 (Minn.1983). To reach a conclusion in this case that a Phase III decision does not provide an opportunity for grievant to seek review by certiorari would be to severely undermine that substantial body of caselaw which has evolved during the last decade.

■ Our conclusion that relator could have sought review by writ of certiorari at the conclusion of the Phase III proceeding does not end our inquiry in this case. Notwithstanding how a Phase III decision may be categorized, relator contends that the Phase IV arbitration proceeding is a university decision reviewable by certiorari and is not arbitration governed by the Uniform Arbitration Act (UAA). We therefore examine the nature of the Phase IV proceeding within the context of the UAA, which provides in relevant part:

A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable, and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract.

Minn.Stat. § 572.08 (2000). The UAA specifically applies "to arbitration agreements between employers and employees or between their respective representatives unless otherwise provided in the agreement." *Id.* "In the absence of a contrary agreement between the parties, written agreements to arbitrate are interpreted with reference to the Uniform Arbitration Act." *Wacker v. Allstate Ins. Co.,* 312 Minn. 242, 248, 251 N.W.2d 346, 349 (1977) (citation omitted).

■ The policy behind arbitration is to ensure a "speedy, informal and inexpensive procedure for resolving controversies." *Franke v. Farm Bureau Mut. Ins. Co.,* 421 N.W.2d 406, 408 (Minn.App.1988), *review denied* (Minn. May 25, 1988).

Caselaw also makes it clear that the UAA applies to agreements between public employers and their employees. *State v. Berthiaume,* 259 N.W.2d 904, 909 (Minn.1977) (addressing arbitration provisions in public collective bargaining agreement); *see Lueth v. City of Glencoe,* 639 N.W.2d 613, 618 (Minn.App.2002) (holding district court has subject-matter jurisdiction to decide arbitration issue raised by public employee), *review denied* (Minn. Apr. 16, 2002).

■ We first consider whether the arbitration agreement in this case "otherwise provide[s]" that the UAA does not apply. Minn.Stat. § 572.08. The arbitration agreement is entitled "Robert J. Woolley, M.D. Grievance Agreement for Binding Arbitration Waiver and Release." It states that the university and relator agree to submit the issues to "final and binding" arbitration pursuant to the university grievance procedure and that "both parties agree to be bound by the arbitration decision." It also provides that by agreeing to submit to arbitration, the relator waives any right to pursue the issues elsewhere. Relator acknowledged in the agreement that he was advised to consult with an attorney; he had 21 days to consider the agreement and, after signing it, had 15 days to cancel it. The agreement does not explicitly refer to the Uniform Arbitration Act or specifically provide that the arbitrator's decision will be subject to judicial review under Minn.Stat. ch. 572 (2000); in hindsight, a reference to ch. 572 would have been informative. But, we are convinced that the mere absence of a reference to the UAA is not sufficient to take an agreement to arbitrate out of the UAA statute, where the statute provides that it applies to arbitration agreements "unless otherwise provided in the agreement." Minn.Stat. § 572.08. Most assuredly there is no language in the parties' arbitration agreement "providing otherwise."

In continuing to contend that Phase IV arbitration is merely a continuance of the university's procedure in addressing his grievance, relator relies upon *Cross v. County of Beltrami*, 606 N.W.2d 732 (Minn.App.2000). We find *Cross* distinguishable. There, the county employee challenged the decision to discharge him, and the parties submitted the matter to the Bureau of Mediation Services, which determined the issue should be decided by an independent arbitrator. *Id.* at 734. The arbitrator held the employee should have been disciplined, not discharged, but the county nonetheless sustained the discharge. This court ruled that under the applicable rules, the bureau had final authority on the resolution of grievances, even if it delegated that authority to an arbitrator. *Id.* at 735.

For the UAA to apply, there must be a written agreement by the parties. Minn.Stat. § 572.08. In *Cross*, the parties did not have a written agreement to arbitrate; instead, the arbitration came about as a result of the decision by the bureau to refer the matter to arbitration under its own rules. In contrast, here it was relator's choice to proceed to arbitration. Far more relevant than *Cross* to relator's situation is caselaw indicating that an aggrieved public school employee to whom arbitration is available may elect to obtain review through arbitration, under which limited judicial review is available under chapter 572, or from the school board, whose decision would be reviewable through certiorari. *Falgren v. State Bd. of Teaching*, 545 N.W.2d 901, 906 (Minn.1996) (holding that findings from arbitration decision on ter-

mination of teacher could be used as collateral estoppel in later teacher license revocation hearing). "[B]y choosing to have his discharge reviewed before an arbitrator, [the employee] waived his rights to broader judicial review." *Id.*[1]

Finally, relator contends that the UAA does not apply because the university grievance policy includes at least four provisions contrary to the UAA, including provisions relating to interest, to representation by an attorney, to the timeline for an award, to the failure to explicitly refer to two out of the three participants in the arbitration decision as "arbitrators," and because of references to internal review.

We recognize that "the right to arbitrate is governed by contract and the parties may fashion whatever agreement they wish to limit the scope of the proceedings." *Grover–Dimond Assocs. v. Am. Arbitration Ass'n*, 297 Minn. 324, 326, 211 N.W.2d 787, 788 (1973). Certain rights, however, may not be waivable. *Grudem Bros. Co. v. Great W. Piping Corp.*, 297 Minn. 313, 316, 213 N.W.2d 920, 922 (1973) (noting that attempts to waive right to attorney provided in UAA "prior to the proceeding or hearing [are] ineffective"). An arbitration agreement whose terms are not fully consistent with the UAA is not necessarily an arbitration agreement not governed by the UAA.

The arbitration proceeding in this case was, we conclude, governed by the UAA. Under the UAA, a party who agrees to arbitration has certain limited rights of judicial review under the act, which "does not involve the direct, judicial review of an administrative body's decision" under cer-

---

1. In *Falgren*, 545 N.W.2d at 906, the employee's choice of review by the school board or by the arbitrator was set out by statute, Minn. Stat. § 125.12, subds. 9, 9a (1990 & Supp. 1991); the former was subject to certiorari review while the latter received more limited judicial review. While no such specific statu-

tory guidance existed here, as we discussed extensively in the body of this opinion and as supported by substantial caselaw, relator nonetheless had the choice of review of the university's decision by certiorari or arbitration, the latter of which had more limited judicial review.

tiorari. *Lueth*, 639 N.W.2d at 618. The party may bring an action to compel or stay arbitration. Minn.Stat. § 572.09 (2000). A party may move for confirmation of an award, *id.* § 572.18, to vacate an award, *id.* § 572.19, or to modify or correct an award. *Id.* § 572.20. Further, these decisions may be appealed to this court. *Id.* § 572.26. But certiorari review of an arbitration decision—even one relating to discharge of a public employee—is not available. *Lueth*, 639 N.W.2d at 618.

> There is no provision in the [UAA] that permits a public employer to bypass the district court and seek initial review of an arbitration award in [the court of appeals] by writ of certiorari * * *.

*Id.* (citation omitted). Consequently, we must reject relator's argument that the Phase IV arbitration decision is reviewable by this court by writ of certiorari. That decision is reviewable by the district court pursuant to Minn.Stat. § 572.08. This court lacks subject-matter jurisdiction of the issues relator wishes to bring before us.

Having determined that subject-matter jurisdiction is lacking in this case, we do not address the question of whether there was just cause to discharge relator from employment with the university.

A final observation: The decision we have reached here has not been an easy one. Arguments could be made that the language of the grievance policy creates a "trap for the unwary." We have expressed our concern with that language at several points in this opinion. We urge the university to revisit, review, reconsider, and revise the language of the policy to whatever extent is needed to enhance clarity.[2] We are unable, however, to equate lack of clarity in grievance policy language with a desire or intention on the part of the university to mislead.[3] Applying both the language of the grievance policy and the substantial caselaw that has developed in recent years, we reach the inevitable conclusion that grievants may obtain direct certiorari review from the final decision of the university after Phase III or may proceed to binding arbitration, from which decision the grievant may obtain only limited judicial review under the UAA.

### DECISION

Because this court does not have jurisdiction to review an arbitration decision pursuant to the UAA in a certiorari appeal, we discharge the writ.

**Writ of certiorari discharged.**

---

2. We do not suggest specific clarifying language, and we again recognize that it is the court, rather than an agency, that must ultimately determine where jurisdiction lies. But we note that several administrative agencies, including the Departments of Health, Human Services, and Economic Security, do offer guidance to parties regarding steps to be taken to obtain judicial review of quasi-judicial agency decisions.

3. The position taken by the university in this case is consistent with its position in *Stephens*. In a unique case, this court held that a county was equitably estopped from challenging the district court's subject-matter jurisdiction where a county ordinance specifically directed a landowner to appeal the county board's decision to district court. *Shetka v. Aitkin County*, 541 N.W.2d 349, 353 (Minn. App.1995), *review denied* (Minn. Feb. 27, 1996). Although the grievance policy in this case is not a model of clarity, the university did not affirmatively misrepresent that the Phase IV arbitration decision could be reviewed by certiorari. Instead, arbitration did not occur until relator signed an agreement waiving any right to pursue the issues elsewhere. *See Naegele Outdoor Adver., Inc. v. Minneapolis Cmty. Dev. Agency*, 551 N.W.2d 235, 237 (Minn.App.1996) (distinguishing *Shetka* because there was no evidence that hearing officer affirmatively misrepresented the proper method of appealing his decision).